COMMERCIAL TRAVELERS' MUT. ACC. ASS'N OF AMERICA v.
FULTON et al.

(Circuit Court of Appeals, Second Circuit.    April 4, 1899.)

No. 28.

1. APPEAL—REVIEW.
   That the appellate court may be inclined to a conclusion different from
   that expressed by the jury in their verdict is no ground for disturbing it,
   if there is evidence sufficient to warrant the court in sending the case to
   the jury.

2. ACCIDENT INSURANCE—CAUSE OF DEATH—QUESTION FOR JURY.
   In an action to recover on an accident policy, the evidence showed that
   insured suddenly fell, striking on a water spout, which left external
   marks on his head and face, and that he died a few minutes thereafter.
   It appeared that deceased was troubled with disease of the heart.    Cer-
   tain physicians testified that the phenomena attending deceased's death
   were characteristic rather of an injury to the brain, than heart disease;
   and one expert testified that the injuries to the head and brain described
   by the evidence would have been sufficient to cause death even in the
   case of a healthy heart.    *Held* sufficient to take the case to the jury.

3. HARMLESS ERROR—EVIDENCE.
   Error in allowing an expert witness to testify as to his opinion, based
   upon the facts included in the hypothetical question, and on reading the
   evidence in a former trial, was harmless, where, on an extended examina-
   tion, there could be no doubt in the jury's mind that the professional
   opinion of the witness was based on the facts involved or testified to on
   the second trial.

4. OBJECTIONS WAIVED.
   An exception to a refusal to dismiss the complaint at the close of
   plaintiff's case was waived when defendant put in his own evidence.

5. TRIAL—RECEPTION OF EVIDENCE.
   Permission to plaintiff to examine expert witnesses after defendant
   has rested is within the discretion of the trial judge.

In Error to the Circuit Court of the United States for the Northern
District of New York.

This cause comes here upon a writ of error to review a judgment of
the circuit court, Northern district of New York, entered upon the ver-
dict of a jury in favor of defendants in error, who were plaintiffs be-
low.    The action was brought by beneficiaries under a policy of insur-
ance, to recover $5,000 for the death of Thomas K. Fulton.    The
cause has been twice tried.    The opinion of this court reviewing the
first trial will be found reported in 24 C. C. A. 654, and 79 Fed. 423.

W. A. Matteson, for plaintiff in error.

Chas. A. Talcott, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge.    Reference may be had to our former
opinion for an elaborate analysis of the contract.    It is sufficient here
to state that the conclusion then reached, and still adhered to, was
that if the assured under such policy sustained an accident, but "at the
time it occurred he was suffering from a pre-existing disease or bodily
infirmity, and if the accident would not have caused the death if he
had not been affected with the disease or infirmity, but he died because
the accident aggravated the disease, or the disease aggravated the

effects of the accident," there could be no recovery. On January 1, 1895, the insured, a man weighing from 180 to 190 pounds, while on the sidewalk, waiting for a street car, suddenly fell, striking upon an iron water spout which projected a few inches above the sidewalk, and which left external, visible marks upon his head and face, in the form of abrasions or bruises, not supposed at the time to be of a serious character. He died from 15 to 20 minutes after the accident, and was buried without any careful examination into the cause of death. Three months after interment the body was exhumed and an autopsy made. It is not disputed that, at the time of his fall, Fulton was affected with a diseased heart. The primary question in the case is whether the fall produced such an effect upon the brain that he died in consequence of the blow thus received, or whether the fall caused his death only by producing such an acute aggravation of the disease of his heart that he died, when a man with a reasonably healthy heart would have lived. The medical testimony is voluminous, and we have carefully examined it. That we may be inclined to a conclusion thereon differing from that expressed by the jury in their verdict is no ground for disturbing such verdict, if there can be found anywhere in the record evidence sufficient to warrant the court in sending the case to the jury. That there was sufficient to take the case to them, we have no doubt. Two, at least, of the physicians testified that, in their opinion, death was caused by an injury to the brain; such opinion being founded in part upon the assumption in the hypothetical question, which elicited such opinion, that immediately after the fall Fulton "was unconscious, only exclaiming, 'Oh!' as he was turned over; breathing hard, as if he was blowing something, and with a rattling noise; his face not pale, but fresh-looking; and died within fifteen minutes to half an hour, without having regained consciousness." These phenomena, they testify, are characteristic rather of a death from injury to the brain than from heart disease. It is true that when, upon cross-examination, the condition of deceased's heart was disclosed to them, they both concede that the organic disease of the heart may have had something to do with the death; but one of them, at least, at the very close of his testimony, testified that the injuries to the head and brain described in the narrative of the post mortem would have been sufficient to cause death, even in the case of a healthy heart. In view of this evidence, and of the testimony of those who saw him fall, and picked him up, that his condition, as to color, breathing, and apparent unconsciousness, was such as is described in the hypothetical question, it would have been error to direct a verdict for defendant.

Certain exceptions to the admission or exclusion of evidence have been presented on the argument, and may be briefly disposed of:

Plaintiffs, as part of their prima facie case, called a doctor, to whom they put a hypothetical question, which was objected to on the ground that "certain facts proven are omitted from the question, and certain other facts not proven are included in the question." The witness answered it, stating that he believed death resulted from some injury to the brain. In reply to the very next question, on cross-examination, he stated that this opinion was based upon the facts included in the

hypothetical question, "and upon reading the evidence in the former trial." Defendant's counsel thereupon moved that the answer expressing his opinion be stricken out, upon the ground that it was based upon some record he had read, as well as upon the question put to him. The motion was denied. Manifestly, this was error. The jury knew nothing about the evidence in the former trial. There was therefore nothing to indicate to them upon what assumed facts the witness predicated his opinion, nor whether his assumptions as to such facts were warranted by the evidence or not. We are of the opinion, however, that the error was harmless. The same witness was recalled in rebuttal, and an extended direct and cross examination fully displayed the grounds upon which he based the opinion, which he reiterated. There could have been no doubt in the jury's mind that the witness' professional opinions were based upon the facts proved or testified to on the second trial. For a similar reason, it will not be necessary to discuss the objections to various other hypothetical questions. All the experts were subjected to such extended examinations that their opinions, under every hypothesis possible under the testimony, were elicited.

The exception reserved to the refusal to dismiss the complaint at close of plaintiffs' case was waived when defendant put in its own evidence. The exception to exclusion of part of an answer by Dr. Boggs, examined on commission, is unsound. The part excluded was hearsay. The questions put to the same witness as to his own statements made in the death certificate were objectionable in form, inasmuch as they assumed the existence of a document not proved; but the witness' answers showed precisely what statements he did include in that document, and it was legitimate cross-examination to ascertain what statements the witness had made on the subject out of court. The permission accorded to the plaintiffs to examine expert witnesses after defendant had rested, in the peculiar circumstances of this case, was within the discretion of the trial judge.

Of the remaining exceptions to rulings upon questions of evidence, some have been covered by what has been said as to hypothetical questions, some refer to matters within the discretion of the court, and the remainder are either unsound, or trivial and unimportant.

A number of exceptions were reserved as to the charge, and as to refusals to charge. None of them need be discussed. The charge most carefully conformed to the opinion of this court upon the first appeal, and could have left no doubt in the jury's mind as to what it was necessary to find in order to give plaintiffs a verdict. That their finding in favor of the plaintiffs was, as defendant contends, against the weight of evidence, is a matter not open for discussion here. The judgment of the circuit court is affirmed.