ALASKA UNITED GOLD MIN  CO. v. KEATING.

(Circuit Court of Appeals, Ninth Circuit.   May 26, 1902.)

No. 742.

1. WRIT OF ERROR—FAILURE TO FILE PETITION—DEFECT OF FORM.

Where, on the filing of an assignment of errors in the trial court, the clerk issued a writ of error, and a judge of the circuit court of appeals approved a supersedeas bond, and issued a citation, which was duly served on the defendant in error, the failure to file a formal petition for the writ, as required by rule 11 of the court of appeals, was a defect of form rather than of substance, and is covered and remedied by Rev. St. §§ 954, 1005, and 26 Stat. 826, 829, § 11; hence such failure is not ground for dismissing the writ of error.

2. SAME—ALLOWANCE—SERVICE.

It is not necessary that a writ of error be allowed by a judge.  It is enough that it is issued and served by a copy lodged with the clerk of the court to which it is directed.

3. SAME—MISTAKE AS TO DATE—OMISSION OF SEAL—CORRECTION.

Under Rev. St. § 1005, providing that the supreme court may at any time, in its discretion and on such terms as may be just, allow an amendment of a writ of error when there is a mistake in the teste of the writ or a seal to the writ is wanting, a mistake in the teste of a writ of error as to the date and the omission of the seal of the court therefrom may be corrected, and do not require that the writ be dismissed.

4. TRIAL—REOPENING OF CASE—DISCRETION.

Where, after both parties had announced that the evidence was closed, the court, at the request of the plaintiff and in the interest of substantial justice, reopened the case to receive further testimony on one of the issues, and it is not claimed that the defendant suffered any injustice, or that his rights were prejudiced thereby, such action should not be held to be an abuse of discretion.

5. NEGLIGENCE—INJURY—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE.

Where a mine owner negligently lowered men into a mine without first ascertaining that the shaft was free from obstructions, and the bucket came in contact with obstructions negligently left in the shaft by a servant, the fact that one of the men stood on a bar above the bucket, and received injuries which he would not have received had he been in the bucket, did not contribute as a proximate cause of the accident, and hence was not contributory negligence.

6. SAME—EVIDENCE—QUESTION FOR JURY.

Where it was customary in lowering men down a mining shaft to lower five men at once, with a bucket 3½ feet square, those who could not stand in the bucket standing on the edge and on a cross bar above, and there is testimony that it was customary to stand on such crossbar and no more dangerous than standing on the bucket, the question whether standing on such bar was negligence was for the jury

7. EVIDENCE—HYPOTHETICAL QUESTIONS—LEADING.

Where, in examining a witness concerning the necessary and proper precautions to be taken for the protection of workmen who are being lowered down a mine shaft, it is necessary to ask questions in the nature of hypothetical questions, it is not error to overrule objections that such questions are leading.

8. NEGLIGENCE—MASTER AND SERVANT—PRECAUTIONS— EVIDENCE—QUESTION FOR JURY.

While plaintiff was being rapidly lowered to his place of work in defendant's mine, the bucket came in contact with an obstruction which a fellow servant had negligently left across the shaft, and plaintiff was injured.  A number of witnesses testified that because of the danger of

¶ 2. See Appeal and Error, vol. 2, Cent. Dig. § 1933.

obstructions and displaced timbers caused by blasting operations it was the custom in many mines to send the empty bucket down the shaft to ascertain that it was clear of obstructions, before sending the workmen down. *Held*, that it was not error to submit to the jury the question whether sending the bucket on a trial trip was a necessary precaution for the safety of the men before sending them down to their place of employment

In Error to the District Court of the United States for the Second Division of the District of Alaska.

In this action the plaintiff. sought to recover damages from the defendant for a personal injury alleged to have been caused to the plaintiff by the negligence of the defendant in operating the mine in which the plaintiff was employed. The case was tried before a jury, and resulted in a verdict and judgment in favor of the plaintiff for the sum of $3,500. The defendant thereupon brought the case to this court upon a writ of error. It was alleged in the complaint that at the time of the injury, on December 21, 1899, the plaintiff was, and for a long time prior thereto had been, an employé of the defendant, engaged as an assistant in working a machine drill in the lowest level in the mine, about 400 feet beneath the surface of the earth; that in order to reach the place of work it was necessary for the plaintiff to enter a skip, cage, or elevator at the mouth of the shaft, to be lowered to the said level; that it was the duty of the defendant to keep said shaft from obstructions while the cage or skip was being lowered or elevated in said shaft to and from the place of work; that on December 21, 1899, the plaintiff, under the instructions of the defendant and in the discharge of the duties of his employment, entered in and upon said skip or cage to be lowered by the defendant to plaintiff's place of work; that the defendant negligently caused, allowed, and permitted a certain obstruction, to wit, a bar of iron or steel, to be and remain in said shaft, extending across the center of said shaft, at a distance of about 290 feet below the surface thereof, which said bar of iron or steel obstructed the descent of said skip or cage and prevented its further descent; that while said cage was being lowered by the defendant as aforesaid at a great rate of speed, and containing the plaintiff and other laborers and a large quantity of drills and other tools, it came in sudden contact with said bar, and by the violence of the impact resulting therefrom plaintiff received such sudden and violent shock and jar as to knock him senseless, and to hurl him violently against the side of the cage and shaft, and, by catching his foot in a portion of the rigging or machinery of said skip, to severely wrench, sprain, and fracture his right foot and ankle, and to otherwise injure and pain him; that at the time of the injury the plaintiff did not know, and had no means of knowing, of the existence of said obstruction in said shaft, but he alleged that the defendant knew, or ought to have known, of said obstruction; that said injury was received without any fault or negligence on the part of the plaintiff, but solely through the negligence and want of care of the defendant; that by reason of said injury the plaintiff was damaged in the sum of $10,000.

The defendant answered the complaint, denying the negligence charged against it, and alleged that at the time of the injury the plaintiff was not in the skip or cage, but was on the top of the same while it was being lowered down said shaft, which was a position of danger, and well known to the plaintiff to be such; that the plaintiff, in getting onto the top of the skip to be lowered into the shaft, was not in the exercise of ordinary care, and would not have been injured had he been in the skip instead of on the top thereof; that the injury to plaintiff was due solely to the negligence and carelessness of the plaintiff's fellow servants in the use and handling of said appliances.

It appears from the evidence in the record that the men working in the defendant's mine were lowered to and hoisted from their places of work by means of skips operated by steam or air power. These skips were large iron buckets about 3½ feet square at the top, about 3 feet square at the bottom, and about 4 feet deep. They were lowered and elevated by a steel

cable which was attached to safety bars extended across the top of the skip. About a foot above the safety bars, and parallel thereto, was a beam, called the bail of the skip. In the shaft at various points there were bars or chairs made of two pieces of iron or steel pipe hinged on one side to the timbers of the shaft, and when let down extended across the shaft, with the end resting on the timbers on the other side. When raised, these chairs or bars folded back into the timbers, and out of the way of the ascending or descending skip, and were kept in position by iron bolts or pins passing through the timbers and into the ends of the bars or chairs. These chairs or bars were let down for the skip to rest upon when being loaded with ore. The mine was operated by night and day shifts of workmen. The night shift came off duty at 6 o'clock in the morning, and the day shift went on at 7 o'clock on that morning. There was in each shift a skip chute tender, whose duty it was to look after these chairs in the shaft, to lower the chairs at a point where the skip was to be loaded, and to raise it up and fasten it in place when not so required, so as to leave the shaft clear for the ascent and descent of the skip carrying the men to and from their work in the mine.

On the morning of the accident described in the evidence the night shift came off duty as usual at 6 o'clock, and at 7 o'clock the plaintiff and four other men entered in and upon the skip to be lowered into the mine. One of the men got into the skip, two on the edge, one on the top bar or bail, and the plaintiff on the safety bar. The skip was then lowered rapidly into the shaft, and at a depth of about 290 feet came into sudden contact with a chair or bar at that point, and stopped. Plaintiff was thrown off the safety bar and injured. This was the first time the skip had been sent down the shaft after the previous shift had come off duty, at 6 o'clock. Plaintiff testified that it was the custom of the engineer in charge of the hoist to send down an empty skip before sending the men down, to see that the shaft was clear of obstructions. This was not done on this occasion. The witnesses for the defendant testified that this was not a custom at the mine.

After the evidence had been introduced, and the plaintiff and defendant had both rested, the defendant moved the court to direct the jury to return a verdict for the defendant, for the reason that the evidence conclusively showed that if there was any negligence causing the accident it was the negligence of the skip tender, who was a fellow servant of the plaintiff. A direction to the jury to find for the defendant was also asked for the further reason that the evidence showed that the plaintiff was guilty of contributory negligence in placing himself upon the springs of the safety bar of the skip for the descent into the shaft. The court instructed the jury, in substance, that it appeared from the testimony that the injury to the plaintiff was the result of the carelessness and negligence of a fellow servant in failing to put up the chair against which the skip struck after the previous use of the chair. Thereupon the court instructed the jury to return a verdict for the defendant. The plaintiff's counsel immediately, and before the jury had retired, interposed exceptions to the instructions of the court, and offered to submit to a nonsuit. Counsel for defendant objected to this procedure, and, after some consideration of the question of the right of the plaintiff to have the case disposed of in that way, counsel for plaintiff made application for leave to reopen the case for the purpose of showing by the evidence of expert miners that it was the custom of all large mines, before men were sent down underground, to make a test of the shaft, to see that it was clear of obstructions, either by sending down the skip on a trial trip, or by sending men down for that express purpose, and it was contended that to send men down for work in a shaft without any such precaution was gross negligence. The court, exercising its discretion, in view of all the facts and circumstances of the case, thereupon reopened the case, and proceeded to take testimony upon the question as to the custom of sending down a skip to ascertain whether it was safe before sending men down into the mine to work. The testimony upon the part of the plaintiff tended to show that in many mines it was customary, before lowering the men to their places of work in the mines, to send down an empty skip to test the shaft for obstructions, and that such a test was a reasonable and necessary precaution to prevent

such an accident as that by which the plaintiff was injured. The testimony on behalf of the defendant tended to show that no such custom prevailed, and that directions to the skip chute tenders to fasten the bars or chairs back into their places was all that was usual or customary in the mines.

J. F. Malony and J. H. Cobb (John Flournoy, of counsel), for plaintiff in error.

L. S. B. Sawyer, Crews & Hellenthal, and R. W. Jennings, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The defendant in error has interposed a motion to dismiss the writ of error on the grounds that no petition for the writ of error was filed herein in accordance with rule 11 of this court (31 C. C. A. cxlvi, 90 Fed. cxlvi), and no writ of error was allowed by any judge, as required by said rules and the rules prescribed by the supreme court of the United States. The motion was made upon the further ground that the writ of error was not under the seal of the court from which it was issued, and did not bear teste from the date of its issue.

Rule 11 of this court prescribes the practice to be followed with respect to the assignment of errors, and provides that "the plaintiff in error, or appellant, shall file with the clerk of the court below his petition for the writ of error or appeal and assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged. No writ of error or appeal shall be allowed until such assignment of errors shall have been filed," etc. The assignment of errors was filed by the plaintiff in error with the clerk of the court below on July 25, 1901, in which was set out the errors asserted and urged upon the court as grounds for the reversal of the judgment. Thereupon the clerk of the court issued a writ of error requiring that the record and proceedings in the case be sent to this court, and on the 2d day of August, 1901, a judge of this court approved a supersedeas bond, and signed and issued a citation requiring the defendant to appear in this court, "pursuant to a writ of error filed in the clerk's office of the United States district court for the district of Alaska, division No. 1, at Juneau, * * * to show cause, if any there be, why a judgment in the said writ of error mentioned should not be corrected and speedy justice done to the parties in that behalf." The filing of an assignment of errors in the court below, the issuance of a writ of error by the clerk of that court, the taking of a supersedeas bond, and the signing and issuance of a citation by a judge of this court, and the service of this citation upon the defendant in error, were the proceedings required by statute and by the rules and practice to bring the case into this court. The absence of a formal petition for a writ of error did not prejudice any of the substantial rights of the defendant in error, and must be treated as a defect of form rather than of substance, and the same may be said with respect to the lack of a formal allowance of a writ of error. All such defects in proceedings are fully covered and remedied by sections 954 and 1005 of the Revised Statutes, and section 11 of the act of March 3, 1891 (26 Stat.

826, 829). It is not required that a writ of error be allowed by a judge. It is enough that it is issued and served by a copy lodged with the clerk of the court to which it is directed. Davidson v. Lanier, 4 Wall. 447, 18 L. Ed. 337; Ex parte Virginia Com'rs, 112 U. S. 177, 5 Sup. Ct. 421, 28 L. Ed. 691; Trust Co. v. Stockton, 18 C. C. A. 408, 72 Fed. 1. In Brandies v. Cochrane, 105 U. S. 262, 26 L. Ed. 989, it was held that an appeal may be perfected without an order formally allowing it, and that an appeal is in legal effect allowed when the circuit judge takes the security and signs the citation. The same rule was followed in Brown v. McConnell, 124 U. S. 489, 8 Sup. Ct. 559, 31 L. Ed. 495, on an appeal from the supreme court of the territory of Washington. The objection that the writ of error was not under the seal of the court from which it was issued, and did not bear teste of the day of its issuance, refers to a mistake in the writ and an omission of the seal therefrom. These defects can be corrected under section 1005 of the Revised Statutes, and the court will so order.

The plaintiff in error assigns as errors the action of the court in reopening the case, and permitting the plaintiff to introduce further evidence after both the plaintiff and defendant had announced that the case was closed; the refusal of the court at the conclusion of all the evidence to grant the defendant's motion to instruct the jury to return a verdict for the defendant; the action of the court in permitting a witness to testify, in substance, that from his knowledge and experience in mining it was a necessary and proper precaution to be taken for the protection of the employés who were being lowered to their work down the shaft to first lower the skip empty to test the shaft, and see that the same was free from obstructions; errors in instructions given to the jury respecting the responsibility of the master for the acts of those whose services were of such a character that they represented the master; the duty of the master to provide a reasonably safe place for the employé to work in; and the absence of responsibility on the part of the master for the carelessness of a fellow servant.

The action of the court in reopening the case after both parties had indicated that it was closed was the exercise of a discretion with respect to judicial procedure in the trial of the case, and the only question for this court to determine is whether the court below exercised a sound discretion, in view of all the facts and circumstances of the case. The practice of reopening the case to take further testimony after the judge has instructed the jury as to the law of the case is a practice that should generally be condemned, if for no other reason because it is a departure from the established method of procedure, and tends to produce confusion and uncertainty in the practice. But there may be exceptional instances where the court would be justified in making this departure, if neither party is prejudiced by it and it is in the interests of substantial justice. This appears to be the case in the present instance. It is not claimed by the plaintiff in error that it has suffered any injustice or that its rights have been prejudiced in any way by the action of the court. In the absence of such a showing we cannot say, under such circumstances, that the court exercised an unsound discretion in reopening the case.

It is contended by the plaintiff in error that the refusal of the court at the close of the evidence to instruct the jury to return a verdict for the defendant involves two questions: (1) Whether the evidence established the fact that the injury to the plaintiff was caused by the negligence of a fellow servant in failing to remove the chair or bar from the shaft so as to leave the shaft unobstructed for the lowering of the skip; (2) whether the evidence established the fact that the plaintiff was guilty of contributory negligence in placing himself upon the safety bar of the skip for the descent into the shaft. With respect to the first question, there is no ground for objection in the record. The court instructed the jury that the skip chute tender was a fellow servant of the plaintiff, and that the chair being down so as to cause said injury was the carelessness and negligence of the fellow servant, and not the carelessness or negligence of the defendant, and that the verdict of the jury should be for the defendant unless the jury should further find that an additional precaution, viz., running down the skip for a trial trip at the time of making shifts, was necessary for the safety of the men before allowing them to go thereon to their places of employment. It is evident that the objection of the plaintiff in error is directed to the last qualifying paragraph of this instruction, which will be considered hereafter.

With respect to the defense urged, that the plaintiff was guilty of contributory negligence, it is necessary to understand what constitutes contributory negligence in a case of this character. It is the want of ordinary care and prudence on the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred. 7 Am. & Eng. Enc. Law (2d Ed.) p. 371. Assuming that the presence of an obstruction in the shaft ought to have been ascertained by the defendant before the skip on which plaintiff was riding was sent down, and that this omission was the negligence of the defendant, then it is clear that the plaintiff's position on the skip, although it may have been dangerous, was not a proximate cause of the injury, as it did not combine or concur with the defendant's negligence in causing the injury. In other words, if between the negligence of the master or a servant in leaving an obstruction in a shaft or passageway that may cause an injury to another servant there intervenes the positive duty of the master to ascertain that the shaft or passageway is clear of obstructions, then the person injured cannot be charged with contributory negligence, unless his want of ordinary care was in some way connected with the negligence of the master in failing to keep such shaft or passageway clear of obstructions. These concurring and contributing causes, acting together, are not found in this case, and in this aspect of the case the plaintiff's act, however it may be viewed, was not a proximate contributing cause of the injury. This distinction between the proximate and remote cause of an injury was recently applied to a somewhat similar state of facts in the case of Railway Co. v. Carlin, 49 C. C. A. 605, 111 Fed. 777. There one of a gang of workmen engaged in repairing a bridge on the defendant's railroad left a heavy iron hammer or sledge with which he was driving

spikes lying on the bridge. It was the duty of the foreman to see that all obstructions were removed from the bridge before the passing of any train. When the train connected with the accident approached, the foreman was alone on the bridge near the place where the hammer lay, but he failed to see or remove it, and it was struck by the train and thrown some distance from the track, where it struck one of the workmen, severely injuring him. The circuit court of appeals held that, conceding the workman who left the hammer on the bridge to have been negligent in so doing, his negligence was not the proximate cause of the injury, which was the negligence of the foreman in failing to see the hammer and remove it on the approach of the train.

But there was evidence tending to show that the plaintiff herein was using ordinary care with respect to his position on the skip. McDonald, a superintendent of another mine, who was a witness for the defendant, testified that from his experience and knowledge of machinery the proper place and the place intended for men to ride in ascending and descending the shaft was in the skip and on top of the edge of the skip; also that they could ride on the safety bar of the skip or safety bow. He said they could not ride on the springs, because they would be worn out by the men's feet, but that it was safe enough for a man to stand on the edge of the skip and on the bar above the springs, and he could stand on the springs if he did not meet with an accident. The plaintiff testified that the skip was the customary way of going down into the shaft; that it was customary to take the whole squad at once,—as many as could get on. He was asked if there was anything that would make standing on the safety bar as they went down more dangerous than standing on the edge of the skip or standing on the skip. His answer was, "No, it was customary." The skip was an iron bucket about 3½ feet square at the top, 3 feet square at the bottom, and about 4 feet deep. The skip was so loaded with tools that only one of the five men going down could get inside the skip. The other four distributed themselves as best they could on the bars or bails and on the edge of the skip. This was the usual way of taking workmen down into the mine. Their safety in going down necessarily depended upon the shaft being kept clear of obstructions or in the care taken in lowering the skip slowly down the shaft. This evidence tended to establish the fact that the plaintiff, going down in the usual way, used ordinary care in getting upon the skip; and considering all the evidence in the case, and particularly the evidence tending to show as a fact that it was the duty of the defendant to keep the shaft clear of obstructions, we think it cannot be said that the necessary legal inference to be drawn therefrom was that the plaintiff was guilty of contributory negligence. The question was therefore one for the jury. Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642; Railroad Co. v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975, 41 L. Ed. 82.

The objection that the court permitted a witness to testify concerning the necessary and proper precaution to be taken for the protection of the workmen who were being lowered down the shaft to their places of work cannot be sustained. The objection was that the question

was leading. The court very properly ruled that the question was in the nature of a hypothetical question, and therefore necessarily in that form.

The objections to the instructions of the court to the jury may all be considered under the objection to the following instruction given:

"If you find from the evidence that the shaft was properly constructed and in good repair; that the skip and machinery connected therewith was suitable and proper for the purpose of lowering men to the places in which they were to work in said mine; that the defendant had formulated proper rules, and these rules and orders had been communicated to the skip chute men, as to the manner in which the chairs were to be handled and fastened in place so that the shaft should be kept free for the ascent and descent of the skip; and you further find that the injury of the plaintiff was caused by the chair being negligently left down and across the shaft by the skip chute man, and not by his own contributory negligence,—then I charge you as a matter of law that the chair being down so as to cause said injury was the carelessness and negligence of the fellow servant, and not the carelessness or negligence of the defendant, and your verdict should be for the defendant, unless you further find that an additional precaution, viz., running down the skip for a trial trip at the time of making shifts, was necessary for the safety of the men, before allowing them to go thereon to their place of employment.'

The evidence showed that a chair or bar had been negligently left down and across the shaft at a point about 290 feet below the surface; that the skip carrying the plaintiff came suddenly in contact with this chair or bar, and in the collision the plaintiff was injured. The court instructed the jury that the negligence in leaving this chair or bar down and across the shaft was the negligence of a fellow servant, and not the carelessness or negligence of the defendant, and that the verdict of the jury should be for the defendant. This instruction was clear, positive, and direct, and disposed of the question of liability of the defendant in this action, with one single qualification, and that was the question, did the defendant owe to the plaintiff a positive duty to use reasonable precaution to ascertain whether the shaft was clear of obstructions before lowering him down the shaft to his place of work? This question the court submitted to the jury as a question of fact to be determined from the evidence relating to the custom in the operation of mines where this precaution was taken to secure the safety of the workmen. A number of witnesses testified that such a custom did prevail in many mines, because of the danger of obstructions and displaced timbers in the shaft caused by blasting operations. There was also the inference that the time elapsing between the coming up of the night shift and the going down of the day shift, to which the plaintiff belonged, made it specially necessary that the effect of such disturbances should be ascertained before sending workmen down the shaft. What was a reasonable precaution to be taken by the defendant to secure the safety of the plaintiff, under the circumstances of the case, was a question of fact for the jury, and justified the instructions of the court.

Finding no error in the proceedings, the judgment of the circuit court is affirmed.