AMBRO, Circuit Judge,
dissenting.
Two men robbed a store. The single eyewitness, Alyia Z. Hasan, gave police a statement in which she described one of the robbers as having “nice hair” and a “Muslim-type beard.” Attempting to determine the identity of this robber, the police later presented Hasan with a photographic “line-up” that appeared to include only two or three individuals fitting the description she earlier gave. At trial, largely based on deficiencies in the suggestive line-up, defense counsel vigorously challenged whether the defendant, Nolan Hugh, was one of the robbers. By mistake, the form on which Hasan’s description of the robbers was recorded, marked as exhibit D-l-A, was not introduced in evidence; however, it was extensively referenced — without Government objection— during defense counsel’s closing argument. Soon after the jury retired to deliberate *802 and the physical evidence was assembled for its review, the parties discovered the error. As one might expect, defense counsel moved to reopen the record so that exhibit D-l-A could be introduced in evidence and sent to the jury. The District Court denied the motion, ruling that admitting it would invite the jury to give it “undue weight.” During deliberations, the jury specifically requested to see exhibit D-l-A, but the District Court refused. I believe that this was reversible error. By ruling otherwise, and with citation to almost none of the relevant law, the majority makes abuse-of-discretion review tantamount to no review at all. I respectfully dissent.
I. The Legal Framework
Despite the impression one might get from the majority opinion, “[t]here is no iron-bound, copper-fastened, double-riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations.” United States v. Blankenship, 775 F.2d 735, 741 (6th Cir. 1985); see, e.g., DiBella v. Hopkins, 403 F.3d 102 (2d Cir.2005) (affirming district court’s grant of a motion to reopen); United States v. Smith, 42 F.3d 1404 (9th Cir. 1994) (table decision), text at 1994 WL 680999 (same); United States v. Green, 757 F.2d 116 (7th Cir.1985) (same); United States v. Carter, 569 F.2d 801 (4th Cir. 1977) (same); Mo. Pac. Ry. Co. v. Oleson, 213 F. 329 (8th Cir.1914) (same); Alaska United Gold Mining Co. v. Keating, 116 F. 561 (9th Cir.1902) (same); Commercial Travelers’ Mut. Acc. Ass’n v. Fulton, 93 F. 621 (2d Cir.1899) (same). Our only task, therefore, is to determine whether the District Court abused its discretion in refusing to allow Hugh to do so in the context of this case. Anzano v. Metro. Life Ins. Co., 118 F.2d 430, 435 (3d Cir.1941). And though the majority chides Hugh for failing to cite cases that “grant[ed] what [he] asks from this [C]ourt — a decision reversing the [District [C]ourt’s decision not to reopen a case,” Maj. Op. at 799 (emphasis in original), it is clear that such cases do exist, see, e.g., United States v. Parker, 73 F.3d 48 (5th Cir.1996), vacated and reh’g en banc granted, 80 F.3d 1042 (5th Cir. 1996) (en banc), reinstated in relevant part, 104 F.3d 72 (5th Cir.1997) (en banc); United States v. Walker, 772 F.2d 1172 (5th Cir.1985); United States v. Larson, 596 F.2d 759 (8th Cir.1979).[8]
The framework for analyzing questions of this sort is well-stated in United States v. Thetford:
In exercising its discretion [when deciding whether to reopen the record], the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. The party moving to re *803 open should provide a reasonable explanation for the failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not “imbue the evidence with distorted importance, prejudice the opposing party’s case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.”
676 F.2d 170, 182 (5th Cir.1982) (quoting Larson, 596 F.2d at 778).[9] “The most important consideration is whether the opposing party is prejudiced by reopening.” Blankenship, 775 F.2d at 741. Naturally, the later in the proceedings the motion is made, the more likely that the non-moving party will be prejudiced. See id. To repeat, though, “[mjotions to reopen have been granted after both parties have rested.” Larson, 596 F.2d at 778 (citing United States v. Barker, 542 F.2d 479 (8th Cir.1976)); see DiBella, 403 F.3d at 119-21 (reopening the record during closing arguments); Smith, 1994 WL 680999, at *1 (admitting items “[a]fter the close of evidence”); Walker, 772 F.2d at 1177 (reopening the Government’s case-in-chief after both sides had rested); Keating, 116 F. at 565 (introducing “further evidence after both the plaintiff and defendant had announced that the case was closed”). Additionally, and particularly pertinent to this case, “[rjeopening is often permitted to supply some technical requirement ... [or] some detail overlooked by inadvertence.” Blankenship, 775 F.2d at 740.
II. Applying the Legal Framework
The majority offers only two explicit reasons for finding no abuse of discretion in this case: (1) Hugh did not offer exhibit D-l-A in evidence before resting his defense case, see Maj. Op. at 798-99; and (2) exhibit D-l-A is inadmissible in any event, see Maj. Op. at 799-801. As to the first reason, I agree. But so what? The very purpose of a motion to reopen the record is to admit evidence not previously admitted. If the majority’s point were valid, no motion to reopen should ever be granted. That, of course, cannot be the case, and the majority’s argument in this regard, therefore, needs no further response. As for the majority’s second reason, I address it in Part II.A immediately below. In capsule form, the portion of exhibit D-l-A giving Hasan’s description of the robbers is admissible, and the majority ultimately acknowledges this. In Parts II.B-D, I go on to address other factors relevant to the decision whether to reopen, as admissibility is not by itself sufficient to justify reopening the record.
A. Admissibility
The majority finds “no error in the District Court’s ruling that [exhibit] D-l-A was inadmissible hearsay.” Maj. Op. at 799. I disagree, for it is hornbook law that the portion of exhibit D-l-A giving Hasan’s description of the two robbers, including reference to one as having “nice hair” and a “Muslim-type beard,” is not hearsay and is therefore admissible. See Fed.R.Evtd. 801(d)(1)(C) (“A statement is not hearsay if ... [t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and *804 the statement is ... one of identification of a person made after perceiving the person .... ”); United States v. Brink, 39 F.3d 419, 424-26 (3d Cir.1994); McCormick on Evidence § 251, at 385-86 (John W. Strong et al., eds., 5th ed.1999). The majority admits as much. See Maj. Op. at 799-800 (“[0]nly one answer to one question in [exhibit D-l-A] can fairly be characterized as a statement [of prior identification].”).
For our purposes, the discussion on admissibility should end there. But instead, the bulk of the majority’s discussion attempts to explain why Hugh effectively waived any claim to the admissibility of exhibit D-l-A by defense counsel’s “failure to call this single answer or Rule 801(d)(1)(C) to the [District] Court’s attention.” Maj. Op. at 800. There are several problems I have with this analysis, not the least of which is the questionable relevance of a waiver-type argument in the first place. The alleged error in this case is not so much about admissibility, but rather the District Court’s refusal to reopen the record. Our review, therefore, is not the same as when we consider typical evidentiary rulings as to admissibility, where a defendant’s waiver triggers plain error review. Instead, we review here for an abuse of discretion in the denial of a motion to reopen the record, in which the only requirement at this step of the analysis is that the exhibit be admissible in the abstract. Concerns over timeliness and the adequacy of counsel’s advocacy are addressed by other factors set out in Thetford and Larson. Waiver, therefore, cannot have a determinative effect on a decision of this nature, and the majority errs in concluding otherwise.
But even the majority’s waiver-of-admissibility argument has problems. First, the District Court did not rest its decision refusing to reopen the record on exhibit D-l-A’s supposed inadmissibility. Instead, when defense counsel asked the Court, “On what ruling, Your Honor, because they’re hearsay, or because they were never submitted?”, it replied, “I think the jury understands the statements, and I think ... it gives undue weight to [the] statements, even assuming that they are otherwise admissible.” That this concern formed the basis of the Court’s ruling was confirmed later when the jury specifically requested to see exhibit D-l-A and a lengthy discussion between the Court and counsel ensued. Concluding that discussion, the Court ruled:
[Exhibit D-l-A is] not substantive evidence, and even if ... it’s somehow admissible at this point, I think by sending it out to the jury it would give undue weight to that statement. The jury needs to consider everything [Ms. Hasan] said on the witness stand, and it’s their recollection of what she said that’s important. And I would not send it out with the jury, even if somehow it were admissible as substantive evidence.
In short, the majority hardly can fault Hugh for failing to raise Rule 801(d)(1)(C) when it would not have made a difference in the Court’s decision.
Second, when the Court and counsel did finally wrestle with the hearsay issue— only after the denial of the motion to reopen and after the jury’s request to see exhibit D-l-A — the Court concluded as follows:
[Exhibit D-l-A] does not come within the exception set forth in rule 801(d), which defines statements which are not hearsay. And while under certain circumstances prior statements of witnesses may be admitted into the record, and are not deemed to be hearsay, this document does not come within the definitions set forth in 801(d)(1).
First of all, it doesn’t come within rule 801(d)(1)(A), since it is not given under *805 oath. It does not come within the definition of 801(d)(1)(B) because it’s not being offered as a statement consistent with the declarant’s testimony, and it is not offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.
The analysis inexplicably stops there. After having addressed Rule 801(d)(1)(A) and 801(d)(1)(B), the Court never took the next logical step and considered Rule 801(d)(1)(C) — even though that is clearly the applicable provision. It is true that Hugh never specifically raised Rule 801(d)(1)(C), but neither was he required to do so under our precedent. See Brink, 89 F.3d at 425 (holding it sufficient merely to argue that “ ‘under the federal rules [a statement] is not hearsay.’ ... Although [the defendant] did not mention Rule 801(d)(1)(C) expressly, his objection was sufficiently specific to inform the district court.”). The question whether exhibit D-1-A contained hearsay was presented to and addressed by the District Court. That is all that is required.
Finally, the majority faults Hugh for attempting to admit the entirety of exhibit D-l-A (a two-page document) rather than just the small portion comprising Hasan’s description of the robbers. See Maj. Op. at 799-800. Even if the majority is correct that the entire exhibit is not admissible,[10] Hugh’s primary concern was whether the portion containing the description was introduced. The only reason his counsel discussed exhibit D-l-A in his closing at all was to implore the jury to compare the photographic line-up with the description Hasan gave to the police, and thereby conclude that the line-up was too suggestive to credit Hasan’s identification of Hugh. If the District Court’s concern were truly with inadmissible hearsay portions of the document, there is no reason why the document could not have been redacted.[11]
In sum, I conclude (as does the majority) that the relevant portion of exhibit D-1-A is admissible. It thus becomes necessary to consider other factors, such as the character of the evidence proffered, counsel’s excuse for failing to introduce it in a timely manner, and the prejudice that might have resulted from its untimely admission. I address these factors in the sections that follow.
*806 B. Character of the Evidence
When evaluating the character of the proffered evidence, courts should consider the practical problems (e.g., disruptiveness to the trial) that may result in granting a motion to reopen, as well as what effect it would have on the entire case. See, e.g., Walker, 772 F.2d at 1178-79. Here, both considerations weighed in favor of Hugh’s motion to reopen.
First, the practical implications of reopening the record in this case were virtually nil. Exhibit D-l-A had already been authenticated and could have been moved in evidence in a matter of seconds — and certainly in a shorter amount of time than the District Court spent concluding that an admissible document would not be admitted by reopening the record. The situation here (involving a single additional document) is similar in character to that presented in Smith, see 1994 WL 680999, at *1 (allowing gift certificates to be admitted after the close of evidence), or DiBella, see 403 F.3d at 119 (reopening the record to introduce a time-sheet). Moreover, admitting exhibit D-l-A would have been less disruptive than reopening the record for additional testimony, which other courts have allowed. See, e.g., Blankenship, 775 F.2d at 738, 741 (admitting the testimony of three additional witnesses); Green, 757 F.2d at 119 (one additional witness); Oleson, 213 F. at 331 (same); Keating, 116 F. at 565 (same); Fulton, 93 F. at 623 (multiple expert witnesses).
Second, the importance of Hasan’s description of the second robber as having “nice hair” and a “Muslim-type beard” to Hugh’s defense is undeniable. In a trial at which the major point of contention was the proper identification of the suspect, exhibit D-l-A certainly had the potential to cast significant doubt on the validity of the only formal identification of Hugh that Hasan ever made.[12] Specifically, Hugh’s counsel argued in his closing statement that, given Hasan’s description, the photographic line-up from which she selected Hugh as one of the robbers was unduly suggestive:
Well, you’ll look at her report, ladies and gentlemen, I’ve marked it as Exhibit [D-l-A], and in that report, ladies and gentlemen, you read it. She says he had a Muslim-type beard. It’s got a little chart for you here. Because she also said he had nice hair. Of the eight people, we have to find the Muslim guy with nice hair.
Well, ladies and gentlemen, let’s get rid of the non-Muslim beards, shall we? Guy number one definitely has a Muslim-type beard. Guy number two, my client, definitely has a Muslim-type beard. Guy number three, oh, that ain’t a Muslim-beard, ladies and gentlemen. Guy number four, he has a Muslim-type beard. Guy number five, ah you could say that was Muslim....
... Guy number six, that is not a Muslim-type beard. Guy number seven, possibly. And guy number eight, that is definitely not a Muslim-type beard. I will let you make these opinions when you go in there.
So now we’ve gone from eight to ... five. Well, still, those odds aren’t bad. 20 percent chance, okay? Well let’s look at the guy. She said he had nice hair. She remembers the nice hair, remember that?
Who’s got nice hair here? He doesn’t have hair, so he’s not going to be getting Mr. Nice Hair award. He’s got very well groomed hair. This guy, we’ve al *807 ready taken, yeah, we’ll give him [nice] hair. He doesn’t even have hair on that picture, ladies and gentlemen. Okay. This guy, his hair is so short, how could you say he has nice hair?
Ladies and gentlemen, I have conducted what? The process of elimination.
I would ask you, ladies and gentlemen, to look at the page in my hand right now, it says, “Has[a]n.” And I wrote process of elimination, because that is what she testified to. She went through a process of elimination. Just like I did. We didn’t even have to see the man to do that. And I’ve gone from eight to two.
And guess what she also said? He was very nicely groomed. He had beautiful hair. Of those two people, ladies and gentlemen, who gets the nice groom award? I’ll let you be the judge to that.
Our Court has often had to examine the problems created by suggestive line-ups. See, e.g., United States v. Brownlee, 454 F.3d 131 (3d Cir.2006); Thomas v. Varner, 428 F.3d 491 (3d Cir.2005). More generally, we have also noted that special care must be taken in contexts like ours: “[T]he evidence was identification evidence. The dangers inherent in such testimony have many times been commented upon. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Courts must scrutinize this type of evidence especially carefully; juries must to the same.” United States v. Rabb, 453 F.2d 1012, 1014 (3d Cir.1971) (second emphasis added).
Rather than acknowledge the significance that exhibit D-l-A might properly play in the jury’s decision, the District Court instead ruled that sending Hasan’s statement to the jury would give it “undue weight.” This conclusion misses the mark.[13] The situation here is analogous to a jury request to have portions of testimony read back, which we have previously addressed. In Rabb we noted the possibility that “a reading of only one portion of the testimony may cause the jury to give that portion undue emphasis,” but nevertheless concluded that
[r]eading the transcript of the testimony of two ... witnesses would not necessarily emphasize it or preclude consideration by the jury of the other testimony. In these circumstances, it must be assumed that the jury asked for a reading of this testimony because it was in doubt or in disagreement upon its proper evaluation.
Id. at 1013-14 (emphasis added). More generally, we went on to note with approval the position advanced by the American Bar Association in its Standards Relating to Trial by Jury, ABA Project on Minimum Standards of Criminal Justice § 5.2 & cmt. at 134-38, which suggests that courts accede to the reasonable requests of jurors to review specific evidence. Rabb, 453 F.2d at 1014-15 & n. 1. As the Supreme Court of New Jersey has observed,
[w]hen a jury retires to consider their verdict, their discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should *808 be granted. The true administration of justice calls for such action. Where there is a doubt in the minds of jurors as to what a witness said, it cannot be prejudicial to anyone to have that doubt removed by a rehearing of his testimony. There is no need to be chary for fear of giving undue prominence to the testimony of the witness. If under our system of trials a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement.
State v. Wolf, 44 N.J. 176, 207 A.2d 670, 675-76 (1965); see also United States v. Hans, 738 F.2d 88, 93 (3d Cir.1984) (noting that a jury’s request to see certain exhibits indicates their importance); cf. United States v. McCarthy, 961 F.2d 972, 978 (1st Cir.1992) (affirming trial judge’s decision not to send an exhibit back to the jury, but noting that “[t]he jury did not request it”). The jury’s request here similarly demonstrates the importance of exhibit D-l-A in the context of this case, and it should have weighed heavily in favor of granting Hugh’s motion to reopen. For trial-by-jury to work properly, juries must be allowed the tools with which to do their job.[14]
C. Explanation for the Failure to Introduce
Hugh’s counsel did not offer an explicit justification for his failure to put exhibit D-l-A in evidence, as the majority notes. See Maj. Op. at 798-99. But even a cursory examination of the trial transcript tells why: Hugh’s counsel did not understand that simply marking an exhibit for identification does not make it part of the evidentiary record. See Appellant’s App. at 528 (“[THE COURT]: [Exhibit D-l-A was] not moved into evidence. So [it] will not go out. [DEFENSE COUNSEL]: Your Honor, I labeled [it] as [a] defendant’s exhibit and gave [it] a number. THE COURT: Well, that doesn’t mean [it is] in evidence.”). Though this mistake was elementary, it was honest. It also presents a paradigm case for the proper use of a motion to reopen. See Blankenship, 775 F.2d at 740 (noting that reopening the record is often used to admit evidence “overlooked by inadvertence”); cf. Parker, 73 F.3d at 54 (“[T]he excuse given, that defense counsel simply made a mistake, seems reasonable and does not appear to be a subterfuge for seeking delay or unfair advantage.”); Carter, 569 F.2d at *809 803 (finding no abuse of discretion where the court allowed the Government to reopen the record and present evidence “inadvertently omitted from the case in chief’). Just as the Government can be permitted to reopen the record and introduce evidence necessary to support a conviction that was mistakenly not presented in its case-in-chief, see Blankenship, 775 F.2d at 740 (referring to evidence needed to establish proper venue), so too should the defendant be allowed to do the same when inadvertence has caused him to omit a document significant to his defense.
D. Prejudice to the Government
The majority mentions the prejudice prong of the analysis — the “most important consideration,” Blankenship, 775 F.2d at 741 — only in passing and only in general. See Maj. Op. at 799 (“[T]he government had no occasion to address [exhibit D-l-A] through testimony, exhibits, or comments of counsel in closing.”). The Government itself does not address the issue at all. But there is no mystery why this is so: despite the majority’s conclusory statement, there would have been no prejudice to the Government in reopening the record to admit exhibit D-l-A.
Both Hasan and the police officer that recorded her statement were the Government’s own witnesses. As such, the Government can hardly be heard to argue— and it never has — either that it did not know about Hasan’s eyewitness description of the robbers or that the descriptions were somehow inaccurate. Cf. Blankenship, 775 F.2d at 741 (affirming the grant of motion to reopen, saying that the non-moving party “could not have been surprised by the evidence”). Moreover, the jury had already been told of exhibit D-lA’s contents. Cf. Smith, 1994 WL 680999, at *1 (affirming grant of motion to reopen when the district judge had reasoned thus: “[T]here has already been testimony concerning [the evidence], so I will admit [it]____ I mean, the jury has been told about [it]____ I don’t think there is any prejudice to it. And the jury might very well wonder, want to see [it], and then we are left with that problem.”). The majority’s claim that there was no occasion for the Government to address exhibit D-l-A in closing is simply not true. After defense counsel argued extensively during his closing statement that the jury should look critically at exhibit D-l-A (without Government objection[15]), the Government had full opportunity to respond in its rebuttal closing statement. It did not. Given this, it is difficult to imagine how the Government would have been prejudiced by the introduction of exhibit D-l-A. The fact is that no prejudice was possible here, and the majority does not seriously attempt to argue otherwise.
III. Conclusion
Considering all of the factors relevant to this decision, the District Court should have reopened the record and admitted exhibit D-l-A. It was admissible; reopening the record to admit it would not have disrupted the trial; it would have provided the jury with critically important identification evidence — evidence that the jury specifically requested; defense counsel’s failure timely to introduce it was an honest (if elementary) mistake; and there would have been no appreciable prejudice to the *810 Government in admitting it. In short, motions to reopen exist precisely for cases like this, and I believe the District Court abused its discretion in denying Hugh’s request.[16] Perhaps most notable, though, is that the Assistant U.S. Attorney trying this case objected to Hugh’s motion to reopen at all. It is inconceivable to me how justice was served by depriving the jury of relevant, highly probative evidence (not to mention the additional resources that have now been spent in defending the decision).
It is no small matter to say that a district court’s decision was an abuse of discretion. But the ease with which the jury’s request could have been honored and the obvious propriety and fairness in doing so lead me to conclude that this decision not to reopen qualifies. I would reverse Hugh’s conviction and remand this case for a new trial. Therefore, I respectfully dissent.

. In substantively addressing this statement by the majority, I perhaps give it more treatment than it deserves. All that the majority accomplishes by it is to set up and then knock down a strawman. The real story is this: shortly before oral argument, Hugh submitted a letter to our Court pursuant to Federal Rule of Appellate Procedure 28(j) that cited several cases in which the Government had been allowed to reopen the record after it had rested its case. He did this in order to rebut the Government's argument that the District Court’s decision should be affirmed solely because exhibit D-l-A was not moved in evidence before Hugh had rested his defense. To the contrary, argued Hugh, the cases "clearly demonstrate” that exhibit D-l-A "was not, as a matter of law, inadmissible because of defense counsel’s mistake in failing to move earlier for its admission.” Nothing in Hugh’s supplemental submission purports to bolster his primary argument that it was an abuse of discretion for the District Court not to reopen the record. That argument, instead, is appropriately made in his opening brief, and the majority’s faulting him for not also including it in a Rule 28(j) letter is somewhat odd.

. We have approved this framework for use in the "analogous” context of whether to allow additional evidence after a reversal and remand of the denial of a motion to suppress. See United States v. Kithcart, 218 F.3d 213 (3d Cir.2000); United States v. Vastola, 915 F.2d 865 (3d Cir.1990). Both Kithcart and Vastóla cited Blankenship, which in turn cited Thetford and Larson.

. Federal Rule of Evidence 612 permits the introduction of writings used to refresh a witness’s recollection in preparing to testify. See Fed.R.Evid. 612(2). The majority suggests that writings may be introduced under Rule 612 only in order to call into question a witness’s credibility. See Maj. Op. at 800-01. If the preliminary draft of the Federal Rules had been adopted, the majority would be correct; it provided that such evidence is admissible "for the purpose of affecting [a witness’s] credibility.” The revised draft, however, omitted that phrase. This revision did spawn concerns with the apparent broadening of the Rule, but they related only to issues pertaining to privilege and the Jencks Act and were dealt with in the Advisory Committee’s Notes. In any event, those concerns are irrelevant here. See 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure, § 6181, at 432-42 (1993). Rather than being limited to questions of credibilify, the drafting history and text of Rule 612 instead strongly suggest that it is applicable in cases such as this and, therefore, that the entirety of exhibit D-l-A is admissible.

. The majority would presumably fault Hugh as well for not raising redaction as a possible solution. The simple response, as explained earlier, is that the District Court did not base its ruling on D-l-A's supposed hearsay character, but rather that the jury would give it “undue weight.” Redaction, of course, would not cure that supposed infirmity, and Hugh should not be faulted for failing to mention it. Moreover, district courts should not need the assistance of counsel to suggest that a document be redacted to exclude inadmissible hearsay — an easy and obvious remedy in situations like this.

. Tellingly, the Government never asked Hasan to make an in-court identification of Hugh as the second robber.

. As explained earlier, see supra at 804- 05, the majority avoids addressing the issue by erroneously concluding that the District Court did not base its decision on this ground, see Maj. Op. at 801.

. It is important to bear in mind that a court's proper concern is not the added weight a jury may attach to a given piece of evidence in the abstract, but rather whether such added weight would be "undue.” The evil to be avoided in sending exhibits to the jury is the possibility that the jurors will believe that the judge deems a certain piece of evidence to be particularly significant — an evaluation that is instead within the jury's sole purview. The valid concern present when courts usually decide whether to send an exhibit to the jury, therefore, is absent when the jury itself requests to see it. Here, had the District Court simply admitted exhibit D-l-A and sent it back to the jury at the beginning of deliberations along with all the other exhibits, there would have been no possibility that the statement could have been given "undue" weight. Moreover, even if there were such a possibility, a cautionary instruction could have allayed most concerns in that regard. See Larson, 596 F.2d at 779 (reversing the defendant’s conviction based on the district court’s decision not to reopen the record for additional testimony, noting that "even assuming that the testimony might have derived undue emphasis from its appearance subsequent to all parties resting, a cautionary instruction by the trial judge might have remedied that potential problem”); see also Parker, 73 F.3d at 54 (“It is clear to us that, with the proper cautionary instruction, the jury could have adequately weighed the additional testimony.”).

. The Government now attempts to characterize its failure to object as an exercise in proper courtroom etiquette. See Br. of Appellee at 14 n. 2 ("[Rjather than interrupt defense counsel’s closing argument, the [G]overnment allowed him to complete his closing without interraption, and then objected to sending the Interview Record to the jury as soon as given the opportunity by the court.”). We normally call such silence, no matter how polite, a "waiver.”

. Because I conclude that the District Court erred, I must also decide whether this was harmless. Fed.R.Crim.P. 52(a); Brink, 39 F.3d at 426. An error is harmless when “it is highly probable that [it] ... did not contribute to the jury's judgment of conviction.” United States v. Jannotti, 729 F.2d 213, 220 n. 2 (3d Cir.1984). That is obviously not so in this case. Most significantly, the jury specifically requested to see exhibit D-l-A; based on that alone, one can only conclude that the jury’s decision might have been different had its request been granted. Moreover, it would not be an overstatement to say that the balance of the Government's case against Hugh was weak. The other primary evidence against him included (1) a partial fingerprint that a barely trained examiner using discredited methods determined matched Hugh’s and (2) testimony from Hugh’s girlfriend (who is schizophrenic and prone to hallucinations) about his supposedly (but not very) suspicious behavior in the days after the robbery. Any error here could not be harmless.