**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Henry E. WILLIAMS, Defendant-Appellant.**

No. 81–3300.

United States Court of Appeals, Fifth Circuit.

July 2, 1982.

Rehearing and Rehearing En Banc Denied Aug. 25, 1982.

---

Virgil M. Wheeler, Jr., New Orleans, La., Herbert Shafer, Atlanta, Ga., for defendant-appellant.

Richard T. Simmons, Jr., Michael Schatzon, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

For the second time in as many years, appellant Henry Williams comes before this

court challenging his federal extortion conviction.[1] In this appeal, our attention is focused upon two important rights afforded criminal defendants: the accused's right to know the nature and cause of the government's accusations and his right to be provided with the information necessary to the preparation of an adequate defense. Specifically, we are asked whether this defendant was deprived of his Fifth and Sixth Amendment rights to due process and a fair trial because the government's indictment failed to include specific allegations of fact in support of the interstate commerce element of the charged offense and because the government refused to provide a Bill of Particulars.

We conclude that a federal indictment which alleges interstate commerce effects in conclusory terms, without evidentiary detail, is not fatally insufficient and that the trial court's refusal to order a Bill of Particulars did not constitute reversible error in this case because the government did provide the defense with pretrial access to the facts used to establish the interstate commerce effects of the charged offense. We therefore affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from allegations that appellant Henry E. Williams, a former member of the Jefferson Parish School Board, willfully extorted illegal bribes and kickbacks from contractors and suppliers doing business with the school district. Williams was indicted on three counts of violating the Hobbs Act.[2]

The defendant entered a plea of not guilty on all counts and proceeded to file motions challenging the sufficiency of the indictments. Specifically, Williams argued that two counts of the indictment were fatally deficient insofar as they failed to set forth any specific facts which could sustain a finding that his allegedly extortionate acts affected interstate commerce. Along with his challenge to the sufficiency of the indictments, the defendant also filed a request for a Bill of Particulars which would set forth specific facts relating to the interstate commerce element of the charged offense. The district court denied each of the defendant's pretrial motions.

Prior to trial, the prosecution provided discovery documents in a cooperative and timely fashion. Moreover, the parties stipulated to certain expected testimony and identified documents bearing upon the interstate commerce element of the charged offenses. Thus, prior to trial the defendant was apprised of all the facts which the prosecution ultimately used in establishing the interstate commerce element of the charged offense.

Following a three day trial, the case was submitted to a jury which returned a guilty verdict on all three counts. The defendant then sought a directed verdict of acquittal, arguing: (1) that a conviction for extortion under the Hobbs Act required a showing that the defendant had threatened or actually used violence, force, or fear in unlawfully obtaining property; and (2) that the Hobbs Act itself was unconstitutionally vague. The district court agreed and entered a directed verdict for the accused. *United States v. Williams*, 480 F.Supp. 1040 (E.D.La.1979). The government then appealed.

On appeal, this court reversed the directed verdict of acquittal, finding that proof of

---

1. In an earlier incarnation of this same case, Williams unsuccessfully argued that the Hobbs Act (the federal extortion statute which served as the basis for this action) was unconstitutionally vague. *U. S. v. Williams*, 621 F.2d 123 (5th Cir. 1980).

2. Under the Hobbs Act, 18 U.S.C. § 1951, it is a federal offense for state or local government officials to unlawfully obtain property under color of official right if the accused's extortionate acts have affected interstate commerce.

Count 1 of this Hobbs Act indictment charged that the defendant had willfully extorted $4000 in cash from a contractor doing business with the Jefferson Parish School Board; Count 2 charged that he had extorted approximately $13,000 in cash from an official of a Louisiana data processing service; and Count 3 charged that he had extorted approximately $1200 worth of airline tickets from the data processing service.

coercion was not a necessary element of a Hobbs Act extortion case and that the Hobbs Act was not so vague as to be unenforceable. We therefore remanded the case for reinstatement of the jury's verdict and for sentencing. *United States v. Williams*, 621 F.2d 123 (5th Cir. 1980). As per our instructions, the district court reinstated the jury verdict and sentenced Williams to 18 months of incarceration on count 1; and a four year probationary period on counts 2 and 3. The defendant then brought this appeal.

## II.  ISSUES ON APPEAL

Defendant Williams raises two closely related but analytically distinct arguments on appeal. First: Williams contends that counts 1 and 2 of the indictment were fatally insufficient insofar as they failed to set forth specific facts which could support a finding that his allegedly extortionate acts affected interstate commerce.[3] Second: Williams argues that the district court erred in refusing to grant his pretrial request for a Bill of Particulars. Specifically, Williams contends that since the indictment failed to allege specific facts bearing upon the interstate commerce element of the charged offense, the prosecution was obligated to at least set forth such facts in a Bill of Particulars.

Appellant does not contend that the evidence actually introduced at trial was insufficient to support a Hobbs Act conviction. Williams' argument is that he was denied his right to be apprised of these facts prior to trial by way of indictment or a Bill of Particulars.

## III.  APPELLATE JURISDICTION

■ Henry Williams is challenging his conviction before this Court for a second time. Before proceeding to the merits, we should first explain why this criminal defendant is being afforded two opportunities for appellate review.[4]

■ In the first appellate incarnation of *U. S. v. Williams*, this defendant appeared before us in the role of appellee. As such, he was allowed only to respond to the government's arguments. If in the earlier appeal Williams had sought to raise the arguments he now brings before us, his cross-appeal would have been dismissed for want of jurisdiction; as the victor in the district court, Williams was not then an aggrieved party entitled to review. Moreover, as the defendant in a criminal action, he could not come before this court in the role of appellant until he had been sentenced. *Parr v. United States*, 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956); *Berman v. United States*, 302 U.S. 211, 212–213, 58 S.Ct. 164, 165–166, 82 L.Ed. 204 (1937). It was only after the district court's directed verdict of acquittal had been reversed, the case remanded, and a sentence had been imposed, that Williams could raise the arguments he now urges upon the court in this appeal. Since this is the first time Mr. Williams could appear before us in the role of appellant, we conclude that this case is now properly before us.

Having explained why Mr. Williams is getting two bites at the appellate apple, we now move on to the core issues in this appeal.

## IV.  SUFFICIENCY OF THE INDICTMENTS

Appellant Williams argues that a Hobbs Act indictment which simply charges interstate commerce effects in the generic language of the statute, without any allegations of specific facts in support of that claim, is facially insufficient. As appellant correctly notes, counts 1 and 2 of this indictment did not set forth any specific facts which would establish the interstate com-

---

**3.** Williams does not challenge his conviction on count 3 of the indictment.

**4.** An appellate court must be certain that it is empowered to review the actions of the court below before proceeding to the substance of an appeal. *B., Inc. v. Miller Brewing Company, et al.*, 663 F.2d 545 (5th Cir. 1981). In deference to this principle, we must be certain that this case is properly before us before we proceed to opine.

merce element of the charged offenses.[5] The indictment alleged that the defendants' acts affected interstate commerce, but it did so without providing any evidentiary detail. The question now before us is whether the district court erred in refusing to dismiss such an indictment.

Rule 7(c), F.R.Crim.P., states that federal indictments must provide "a plain, concise, and definite written statement of the essential facts constituting the offenses charged." However, this does not mean that the indictment must set forth facts and evidentiary details necessary to establish each of the elements of the charged offense. As Judge Rubin has stated:

"An indictment, to be sufficient, must allege that the defendant committed each of the essential elements of the crime charged so as to enable the accused to prepare his defense and to invoke the double jeopardy clause in any subsequent prosecution for the same offense ... It is not necessary for the indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges."

*United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978).

As a general rule, an indictment which alleges an element of the charged offense merely by reciting the words of the applicable statute is valid so long as the indictment alleges each of the requisite elements of the charged offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2807, 41 L.Ed.2d 590 (1974); *United States v. Davis*, 592 F.2d 1325, 1328 (5th Cir. 1979); *United States v. Strand*, 566 F.2d 530, 534 (5th Cir. 1978); *United States v. Bermudez*, 526 F.2d 89, 94 (5th Cir. 1975); *United States v. Slepicoff*, 524 F.2d 1244, 1247 (5th Cir. 1975). However, appellant Williams suggests that this case comes within an exception to this well-established principle, arguing that in cases where the very core of criminality depends upon a specific identification of fact, an indictment must do more than simply parrot statutory language; it "may not simply recite ... generic terms but ... must descend to particulars. *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979). Our question is whether an allegation of interstate commerce effects presents one of those special instances where such evidentiary detail is required.

In *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979), we passed upon this very issue and concluded that an indictment which merely alleged interstate commerce effects in conclusory terms was *not* fatally insufficient. In *Diecidue*, a criminal defendant challenged the sufficiency of an indictment which charged the interstate commerce effects of the substantive offense merely by tracking the language of the applicable statute. As in the case *sub judice*, the appellants in *Diecidue* argued that such an indictment was insufficient because the ... "effect on interstate commerce was alleged in conclusory terms, the generality of which gave the Government unfettered discretion in choosing facts with which to prove it at trial." *Id.* at 547. This Court

---

**5.** Count 1 of the indictment here in question charged that

"... while serving as a member of the Jefferson Parish School Board ... [Mr. Williams] did knowingly, wilfully, and unlawfully attempt to and did obstruct, delay, and affect interstate commerce as that term is defined in 18 U.S.C. § 1951(b)3, by means of extortion, in that the defendant did unlawfully seek, ask, solicit and receive, under the color of official right, the sum of $4,000 cash from a contractor doing business with the Jefferson Parish School Board ... all in violation of 18 U.S.C. § 1951."

Count 2 of the indictment charged that

"... while serving as a member of the Jefferson Parish School Board ... [Mr. Williams] did knowingly, wilfully, and unlawfully attempt to and did delay and affect interstate commerce as that term is defined in 18 U.S.C. § 1951(b)3, by means of extortion, in that defendant did unlawfully, seek, ask, solicit, and receive from a former official of Louisiana Computing Corporation, under color of official right, the sum of approximately $13,000 cash, generated by the payment of fictitious bonuses to employees of Louisiana Computing Corporation, which money was not due Williams or his office, and to which neither he nor his office were entitled; all in violation of 18 U.S.C. § 1951."

rejected the appellant's arguments, specifically holding that the interstate commerce element of the charged offense *could* be alleged in conclusory terms. While we recognized that there were certain instances in which conclusory allegations would not be sufficient without additional evidentiary detail, we explicitly held that an allegation of interstate commerce effects did not require such a recitation of specific facts. *Id.* at 547.[6] In reaching this conclusion, we stressed the important distinction between a defendant's constitutional right to know what offense he is charged with and his desire to know the evidentiary details of the prosecution's case. We stated that an indictment which alleged interstate commerce effects in conclusory terms did not "subject defendants to the danger of being retried for the same [crime] on merely a different theory of effect on interstate commerce," *id.*, and that, " . . . an explicit discussion of the . . . effect on interstate commerce would contribute virtually nothing to defendants' understanding of the nature of the offenses charged." *Id.* We therefore concluded that such an indictment was not insufficient.

■ We recognize that the appellants in *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979), were challenging a RICO conviction, whereas in this case we are reviewing the sufficiency of a Hobbs Act indictment. However, this distinction is of no consequence for the purposes of our analysis. Both RICO and Hobbs Act prosecutions require a showing of interstate commerce effects. *Diecidue* held that a RICO indictment may allege interstate commerce ef-

fects in merely conclusory terms. We can see no reason why the same rule should not apply to Hobbs Act indictments.[7]

As we have stated, the reasoning set forth in *Diecidue* is wholly applicable in the instant case. The indictments here in question adequately informed Mr. Williams of the nature of the charges he faced. He was not subjected to the danger of being retried for the same crime on merely a different theory of interstate commerce. Moreover, the defendant in this case was not left unprepared or surprised at trial, for the government *did* provide defense counsel with access to all of the evidence actually used to establish the interstate commerce effects of the defendant's extortionate conduct.[8]

■ *Diecidue* is not deciduous, it lives on as perennial precedent until pruned by higher authorities. The *ratio decidendi* of the "non-deciduous" *Diecidue* controls our decision here. An indictment which alleges the interstate commerce element of a federal offense in conclusory terms, without setting forth evidentiary detail, is not insufficient.

## V. THE TRIAL COURT'S REFUSAL TO ORDER A BILL OF PARTICULARS

Prior to trial, appellant Williams requested that the prosecution provide a Bill of Particulars detailing the facts which could support a finding that his allegedly extortionate acts affected interstate commerce. The trial court refused to order the requested bill. On appeal, appellant Williams cites

6. In *Diecidue*, this Court recognized that there were indeed certain instances in which the omission of evidentiary detail would invalidate an indictment. We noted that an indictment which alleges that the accused has obtained property under false pretenses must specifically allege the false representations made. Similarly, we acknowledged that an indictment which charges a violation of the Selective Service Act in the defendant's refusal to obey certain orders, must specify the nature of the orders disobeyed. However, we went on to hold that no such factual filigree was required with regard to an allegation of interstate commerce effects.

7. We note that the *Diecidue* decision cited *Carbo v. United States*, 314 F.2d 718, 732–33 (9th Cir. 1963) with approval. In *Carbo, supra,* Judge Merrill held that a Hobbs Act indictment need not specifically allege the manner in which interstate commerce was affected. *Id.* at 732–33.

8. In *Diecidue* we noted that absent a showing that the defendant had been prejudiced or surprised at trial as a result of an indictment's generality, the indictment would be deemed sufficient. *United States v. Diecidue, supra* at 547–48.

this as error, arguing that insofar as the indictments failed to allege specific facts bearing upon the interstate commerce element of the charged offenses, the prosecution was required to at least set forth such facts in a Bill of Particulars.

We have stated that "where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request for a Bill of Particulars may constitute reversible error." *U. S. v. Crippen,* 579 F.2d 340, 347 (5th Cir. 1978) (dicta). However, it is well established that a trial court is vested with broad discretion in making its determinations regarding the necessity of Bills of Particulars. *United States v. Colson,* 662 F.2d 1389, 1391 (11th Cir. 1981); *United States v. Hawkins,* 661 F.2d 436, 451 (5th Cir. 1981); *United States v. Wilson,* 647 F.2d 534, 536 (5th Cir. 1981); *United States v. Diecidue,* 603 F.2d 535, 563 (5th Cir. 1979); *Roberson v. United States,* 249 F.2d 737, 739 (5th Cir. 1957). A refusal to grant a request for a bill will constitute reversible error only if it can be shown that the defendant was actually surprised at trial and thereby incurred prejudice to his substantial rights. *United States v. Colson, supra; United States v. Hawkins, supra; United States v. Wilson, supra; United States v. Diecidue, supra; Roberson v. United States, supra.* Thus, the crucial question here is whether the defendant was actually surprised and prejudiced at trial as a result of the district court's refusal to order the Bill of Particulars.

The parties agree that all of the evidence relied upon by the government to establish the interstate commerce element of the offense was made available to the defense prior to trial. Although the prosecution refused to provide a Bill of Particulars, the government did provide the defense with a raft of discovery documents and stipulations which apprised the defendant of the facts which would establish the interstate commerce effects of his extortionate acts. Thus, it cannot be said that the prosecution's failure to provide a Bill of Particulars resulted in actual surprise or prejudice at trial.

Because the district court's refusal to grant a Bill of Particulars resulted in neither prejudice nor surprise at trial, we conclude that the trial court's refusal to grant the requested Bill of Particulars did not constitute reversible error.

## VI. CONCLUSION

We find that the indictments here in question adequately served to apprise the accused of the nature of the crime with which he was charged and to describe the offenses with particularity sufficient to bar any risk of the defendant being put twice in jeopardy for the same offense. We also find that insofar as the government provided the accused with pretrial access to the facts used to establish the interstate commerce element of the charged offense, the government's failure to include such factual allegations in its indictment did not result in prejudice or surprise at trial. We therefore conclude that the trial court did not commit reversible error in refusing to dismiss these indictments.

We also find that because the government provided the accused with pretrial access to the evidence used in establishing the interstate commerce effects of the defendant's extortionate acts, the trial court's refusal to order a Bill of Particulars did not result in actual prejudice or surprise at trial. We therefore conclude that the district court's failure to order a Bill of Particulars did not constitute reversible error.

For these reasons, the judgment of the district court is AFFIRMED.

GARWOOD, Circuit Judge, dissenting:

I respectfully dissent. I would hold count one deficient.[1] So far as I am aware this is

---

1. The indictment was in three counts. Appellant was sentenced to eighteen months' imprisonment on count one; on counts two and three he was given a concurrent sentence of four years' probation commencing on his release from confinement under count one. On appeal no challenge is made to count three, and appellant concedes it is sufficient and that since the

the first appellate opinion expressly passing on a Hobbs Act indictment where the interstate commerce aspects of the offense have been alleged *only* in terms of the broadest and most generic legal conclusions and where even the general nature of the asserted interstate commerce nexus is not inferable from the charge as a whole.

The interstate commerce allegations here simply refer to "interstate commerce as that term is defined in United States Code, Section 1951(b)(3)." The referenced definition is of little help; it gives a few examples, some obvious (commerce between points in different states) and others not (commerce within the District of Columbia or any Territory), and concludes by covering "all other commerce over which the United States has jurisdiction." The indictment does not allege that any business of the contractor-victim—either that done with the School Board or otherwise—affected or was in interstate commerce. Indeed, there is no description or identification whatever of the contractor or of the business or type of business he (or she or it) did, either generally or with the School Board. There is no allegation that the activities of the School Board, either generally or in relation to the contractor, affected or were in interstate commerce. There is no allegation that the extortion was to any extent effected or carried out through the use of interstate commerce facilities, nor are any matters alleged so indicating. It is simply impossible to infer from the indictment whether the interstate nexus charged was the business done by the contractor with the School Board, or the contractor's business generally, or the School Board's activities generally, or the means used to effect or carry out the extortion, or some combination of the foregoing.

I do not suggest that the government be required to plead evidentiary detail in an indictment. It need do no more than gener-

ally identify the subject matter of the alleged interstate nexus. For example, if the nexus were a contract between the victim and the School Board, the indictment would merely have to generally identify the contract and allege that it affected or involved interstate commerce. It would not have to recite the evidentiary facts upon which the government would rely at trial to support such allegation.

Neither *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963), nor *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980), are to the contrary.

In *Carbo* the challenged counts were numbers one and five, the former charging "a conspiracy to commit extortion" and the latter "a conspiracy to transmit threats by means of interstate commerce." 314 F.2d at 730–31. Both counts alleged that the conspiracy was, by the use of threats, "to obtain monies representing a share of the purses earned by a professional prize fighter then engaged in championship matches being *nationally televised*, to wit, Donald Jordan" and that this purpose would also be effected through the machinations of a named "major promoter of *nationally televised* prize fights." *Id.* at 730–31 nn. 4 & 5 (emphasis added). It was claimed that these counts did "not allege how interstate commerce was to be delayed, obstructed or affected by the charged conspiracy." *Id.* at 732. The Ninth Circuit rejected this, stating "[i]t is not necessary to plead such evidentiary detail." *Id.* at 733. For this proposition it cited only *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927), thus plainly showing its reliance on the rule that in a conspiracy indictment the offense which is the object of the conspiracy need only be adequately identified, it being unnecessary to fully allege each element of such offense as it would be if it were the crime directly charged.[2] Of

---

sentence on count two is concurrent with that on count three only count one remains in issue. Consequently, this opinion will concern itself only with count one.

**2.** *Wong Tai* states:

"It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the

course, here we are not dealing with a conspiracy charge. Moreover, in *Carbo* the indictment *did identify* the interstate commerce nexus—namely, proceeds from *nationally televised* championship prizefights of a named prizefighter and the business activities of a named *major* promoter of *nationally* televised fights. If the indictment here had given even a fraction as much identification of the interstate commerce nexus as did the *Carbo* indictment, there would be no occasion for this dissent.

*Diecidue* was a prosecution under 18 U.S.C. § 1962(c), as to which there is no requirement that defendant's wrongful activity (a pattern of racketeering activity or unlawful debt collection) in any manner, directly or indirectly, actually affect interstate commerce; it is enough that such activity constitute participation in the conduct of the affairs of an "enterprise," provided *the enterprise* is engaged in or affects interstate or foreign commerce. Here, prosecution is under the first clause of the Hobbs Act, which *does* require that defendant's wrongful activity (extortion) obstruct, delay or affect commerce. Arguably, then, "commerce" in a § 1962(c) prosecution is, like the offense which is the object of a conspiracy in a conspiracy charge, not so much "the gist of the crime" as it is in a prosecution under the first clause of the Hobbs Act, and hence may properly be alleged with greater generality. *Diecidue* cites *Carbo* in support of its holding, and, as we have seen, *Carbo* relies on the special rule of *Wong Tai* concerning allegations of the object offense in conspiracy indictments.

Be that as it may, however, the indictment in *Diecidue* was plainly not subject to the deficiencies present here. In *Diecidue* the indictment identified the enterprise (the several defendants being members of it) and alleged that it engaged in and that its activities affected interstate commerce; it also alleged that the defendants partici-

pated in the conduct of the enterprise's affairs through a specified pattern of racketeering activity. While it did not allege defendants' referenced racketeering activity affected interstate commerce, that (as above pointed out) is not any part of the offense denounced by § 1962(c). Accordingly, the indictment here would be comparable to that in *Diecidue* if, for example, it had alleged that the contractor's business with the School Board involved or affected interstate commerce. But the indictment contains no such allegation.

The majority points out that prior to trial the appellant was, through the government's voluntary disclosure, made aware of its theory of the case, including the nature of the interstate commerce nexus, and that the indictment adequately protects against double jeopardy. These are not the only functions of an indictment, however. A sufficient indictment is also necessary under the Fifth Amendment "to assure the defendant that a grand jury properly determined probable cause of the offense." *United States v. Outler*, 659 F.2d 1306, 1311 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982). This requirement is normally satisfied by an indictment which alleges each element of the offense. However, if the allegation of a given element is purely in terms of a generic and wholly abstract legal conclusion, then it affords virtually no assurance that the grand jury has properly determined probable cause. Here we have simply no idea whatever of the general subject matter which the grand jury considered as constituting the interstate commerce involved.

This dissent makes no plea for a technical construction of indictments or for a requirement that they set forth the evidentiary facts which the government will prove at trial to establish the several elements of the offense. But to avoid one extreme it should not be necessary to embrace another.

conspiracy ... or to state such object with the detail which would be required in an indictment for committing the substantive offense .... In charging such a conspiracy 'certainty to a common intent, sufficient to

identify the offense which the defendants conspired to commit, is all that is necessary.'" 273 U.S. at 81, 47 S.Ct. at 301, 71 L.Ed. at 548 (citations omitted).

Surely we can require that an element be set forth more specifically than in terms of a generic and abstract legal conclusion without at the same time requiring any recitation of evidentiary detail. Indeed, that is the spirit of the provision that an indictment "shall be a plain, concise and *definite* written statement of the essential *facts* constituting the offense charged." Rule 7(c)(1) F.R.CR.P. (emphasis added). While doubtless a much greater level of generality is permissible where other aspects of the indictment afford protection against double jeopardy and notice to the accused is not in issue, nevertheless, even in such instances there must be some limit beyond which excessive and virtually meaningless generality will not be allowed to totally substitute for any factually informative identification of the elements of the offense. Otherwise, the indictment will not afford any significant degree of assurance that the grand jury found probable cause for each element of the particular offense charged. Believing the case at bar to be one of those rare instances where this limit has been clearly transgressed, I respectfully dissent.