**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-1982
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

L. C. GIPSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(February 21, 1995)

Before SMITH and BARKSDALE, Circuit Judges, and FITZWATER,[*]
District Judge.

JERRY E. SMITH, Circuit Judge:

I.

In October 1992, L.C. Gipson and some of his friends robbed
and attempted to rob several franchise fried chicken restaurants in
Fort Worth. In January 1993, Gipson was charged in a seven-count
indictment with conspiracy under 18 U.S.C. §§ 1951 and 1952, three
substantive counts of obstructing interstate commerce under §§ 1951
and 1952, and three counts of using or carrying a firearm during a

_____

[*]   District Judge of the Northern District of Texas, sitting by
designation.

crime of violence in violation of 18 U.S.C. § 924(c).[1]

Gipson was convicted at a jury trial of all seven counts. The district court sentenced him to 210 months on each of counts 1, 2, 4, and 6, to run concurrently; 60 months on count 3, to run consecutively to the sentences on counts 1, 2, 4, and 6; 240-month terms on each of counts 5 and 7, to run consecutively to all other counts in the indictment; a concurrent three-year term of supervised release on counts 1 through 7; and the $350 mandatory special assessment. Gipson appealed, challenging the sufficiency of the indictment's allegation of an effect on interstate commerce and several aspects of the district court's application of the Sentencing Guidelines.

## II.

### A.

Gipson asserts that the government failed to charge in the indictment that his crimes affected interstate commerce, and therefore failed to show jurisdiction under Stirone v. United States, 361 U.S. 212, 218 (1960). At the very least, Gipson claims, the government should have been required to provide a bill of particulars specifying the factual basis for the interstate commerce connection and therefore for federal jurisdiction.

The indictment charged Gipson with Hobbs Act violations, specifying that he had robbed several franchise fried chicken

---

[1]  Each of the firearm counts flowed from the same robbery as one of the Hobbs Act counts.

restaurants, and asserted, in the language of the Hobbs Act, that these robberies had affected interstate commerce.[2]  We review the sufficiency of an indictment <u>de novo</u>, finding it constitutionally sufficient if it embraces each <u>prima facie</u> element of the charged offense, notifies the defendant of the charges, and provides him with a double jeopardy defense against future prosecutions.  <u>United States v. Nevers</u>, 7 F.3d 59, 62 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1124 (1994).

This circuit has upheld indictments worded like the one at issue.  In a RICO context, we explained:

> In this indictment, an explicit discussion of the enterprise's effect on interstate commerce would contribute virtually nothing to defendants' understanding of the nature of the offenses charged. . . . We find no indication . . . that defendants were surprised or in any way prejudiced by the generality of the interstate commerce allegation or evidence subsequently introduced to establish it.  The indictment was, therefore, sufficient.

<u>United States v. Diecidue</u>, 603 F.2d 535, 547-48 (5th Cir. 1979), <u>cert. denied</u>, 445 U.S. 946 (1980).  Later, we applied the <u>Diecidue</u> analysis to a Hobbs Act violation:

> <u>Diecidue</u> is not deciduous, it lives on as perennial precedent until pruned by higher authorities.  The <u>ratio decidendi</u> of the "non-deciduous" <u>Diecidue</u> controls our decision here.  An indictment which alleges the interstate commerce element of a federal offense in conclusory terms, without setting forth evidentiary detail, is not insufficient.

<u>United States v. Williams</u>, 679 F.2d 504, 509 (5th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1111 (1983).

---

[2]  The Hobbs Act counts charged, in relevant part, that defendants did "knowingly and wilfully obstruct, delay, and affect commerce and attempt to obstruct, delay, and affect commerce by robbery."

Gipson argues that we should not follow <u>Diecidue</u> and <u>Williams</u> because they conflict with <u>Stirone</u> and <u>United States v. Summers</u>, 598 F.2d 450 (5th Cir. 1979). He is mistaken.

In <u>Summers</u>, we were concerned with whether the jury charge on interstate commerce usurped the jury's factfinding authority; sufficiency of the indictment was not at issue. In <u>Stirone</u>, a variance between the pleading and proof at trial had allowed the defendant to be convicted on a different theory of the effect on interstate commerce from the one alleged in the indictment. <u>Stirone</u>, 361 U.S. at 218 ("[W]hen only one particular kind of commerce is charged to have been burdened, a conviction must rest on that charge and not another, even though it be assumed that <u>under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened</u>.") (emphasis added). Gipson's argument is foreclosed by our holdings in <u>Diecidue</u> and <u>Williams</u>.

We find Gipson's alternative argument))that the government should have been required to provide a bill of particulars))to have been abandoned. <u>See</u> <u>Yohey v. Collins</u>, 985 F.2d 222, 224-25 (5th Cir. 1993) (holding that issues raised but not briefed on appeal are considered abandoned). At any rate, a refusal to grant a bill of particulars constitutes reversible error only if the "defendant was actually surprised at trial and thereby incurred prejudice to his substantial rights." <u>Williams</u>, 679 F.2d at 510. Gipson has failed to make any allegation of surprise or prejudice.

4

B.

At the age of seventeen, Gipson was convicted, <u>as an adult</u>, of two counts of aggravated robbery in Texas court. On each conviction, he received a sentence of greater than one year and one month. Gipson argues that the court erred by including theses sentences, imposed on December 16, 1981, in the calculation of his status as a career offender under U.S.S.G. § 4B1.1. Specifically, Gipson argues that the court wrongly applied § 4A1.2(e)(1) to his prior convictions where § 4A1.2(e)(4) was controlling.

As Gipson's minority convictions fall within the plain language of § 4A1.2(d)(1), § 4A1.2(d)(2) simply is not relevant. Guideline § 4A1.2(d)(1), applying to "offenses committed prior to age eighteen," adds three points to the criminal history score for each time a defendant was convicted as an adult (as Gipson was) and received a sentence of imprisonment exceeding one year and one month (as Gipson did). Section 4A1.2(d)(2), which Gipson argues should be applied through § 4A1.2(e)(4), plainly pertains only to minority convictions not covered by § 4A1.2(d)(1) (<u>e.g.</u>, juvenile convictions or convictions for which defendant received a sentence of one year and one month or less). The applicable time period for Gipson's juvenile Texas aggravated robbery convictions is therefore fifteen years, as specified in § 4A1.2(e)(1). Accordingly, the district court did not err in considering these minority convictions in the calculation of Gipson's criminal history score.

5

Gipson argues that the court violated the Ex Post Facto Clause by not applying the 1991 version of § 4B1.2(3). Gipson was sentenced on October 20, 1993. Accordingly, the 1992 Guidelines, effective from November 1, 1992, until October 31, 1993, are applicable to his convictions absent an ex post facto problem. United States v. Gonzales, 988 F.2d 16, 18 (5th Cir.), cert. denied, 114 S. Ct. 170 (1993). Gipson claims that an ex post facto problem exists because his prior robbery convictions, all sustained on the same date, would not have counted as separate convictions under the 1991 version of § 4B1.2(3).

Gipson is mistaken. The 1991 Guidelines would not have provided him with a shorter sentence. Both the 1991 and 1992 Guidelines require, for a defendant to be sentenced as a career offender, that he be at least eighteen years of age, that the instant offense be a crime of violence or a controlled substances offense, and that he have at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. The sole difference between the two Guidelines versions arises in their definitions of the term "two prior felony convictions," as used in § 4B1.1.

Both definitions require that the defendant committed the instant offense subsequent to sustaining at least two felony convictions of any combination of crimes of violence and drug offenses, and that the sentences for at least two of those felony convictions are counted separately under the provisions of

6

§ 4A1.1(a), (b), or (c). The sole difference between the two provisions is that while the 1991 Guidelines specify that "the date that a defendant sustained a conviction shall be the date the judgment of conviction was entered," the 1992 Guidelines state that "the date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendre." U.S.S.G. § 4B1.2(3) (1991) and (1992), respectively.

A common-sense reading of § 4B1.2(3) reveals that the purpose of the last sentence of both versions is intended to define the word "sustained" in the first sentence of the paragraph. United States v. Salazar, No. 93-1208, slip op. at 5 (5th Cir. Dec. 9, 1993) (unpublished). The last sentence of both versions simply designates the event establishing a conviction for purposes of a career-offender enhancement; it is not relevant to whether Gipson's prior offenses constitute a single or multiple convictions for Guidelines purposes.

D.

Gipson challenges the finding that his seven prior robbery convictions were not "related" to one another under § 4A1.2 application note 3. For Gipson to qualify as a career offender, two or more of his prior convictions must be counted separately under § 4A1.1(a), (b), or (c). The Guidelines specify that sentences flowing from related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c). U.S.S.G.

7

§ 4A1.2(a)(2).

Therefore, if all of his prior offenses were related to each other, Gipson does not qualify as a career offender. Relatedness is defined in both years' Guidelines in Application note 3 to § 4A1.2, which specifies:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. . . . Where prior related sentences result from convictions of crimes of violence, § 4A1.1(f) will apply.

U.S.S.G. § 4A1.2, application note 3.

Gipson attempts to prove that his prior offenses were consolidated by referencing § 4B1.2(3) of the 1991 Guidelines, which states that a conviction is sustained on the date the judgment of conviction is entered. He argues that because his seven prior robbery convictions were all "sustained" on the same day, they were "consolidated."

Gipson provides no legal support for this argument. All but two of the robberies had separate case numbers when they went to trial and judgment, which indicates that at most the two robberies sharing the same case number had been consolidated for judgment. Accordingly, we find that there were at least six unconsolidated convictions, providing ample basis for a career offender enhancement. Even if we agreed with Gipson that his cases had been consolidated, we note that his career offender enhancement would still stand on the basis of his minority convictions.

8

E.

Gipson argues that his convictions under 18 U.S.C. § 924(c) and the Hobbs Act violate the Double Jeopardy Clause. While candidly conceding that his argument is foreclosed by current Fifth Circuit law, Gipson briefed the issue to preserve it for potential Supreme Court review. We reiterate our holding that convictions for both do not violate the Double Jeopardy Clause. See, e.g., United States v. Gonzalez, 40 F.3d 735 (5th Cir. 1994); United States v. Martinez, 28 F.3d 444, 446 (5th Cir.), cert. denied, 115 S. Ct. 281 (1994).

AFFIRMED.