**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 94-10557

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CHARLES PARKER, JR.,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

January 3, 1996

ON PETITION FOR REHEARING
(Opinion August 22, 1995, 5th Cir. 1995, ___ F.3d ___)

January 3, 1996

Before POLITZ, Chief Judge, JONES, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant Charles Parker, Jr. ("Parker") filed a motion for clarification and a motion for rehearing in this cause. The motions are granted and the previous opinion, *United States v. Parker,* 62 F.3d 714 (5th Cir. 1995), is withdrawn and the following opinion is substituted in its place.

Parker was convicted of six counts of obstructing commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and two counts of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).  We affirm in part, reverse in part, and remand to the district court for further proceedings.

FACTS AND PROCEEDINGS BELOW

Parker was convicted of robbing six business establishments in Fort Worth, Texas within a two week period in the Fall of 1993. His total take was approximately $500. He was charged with use of a firearm during two of the robberies. Parker pleaded not guilty and the cases were tried to a jury. The jury found him guilty of all eight counts.

JURY INSTRUCTIONS ON INTERSTATE COMMERCE

The district court instructed the jury as follows:

> If you believe beyond a reasonable doubt the government's evidence regarding the handling of cash proceeds from the Payless Shoe Store referred to in Count 1 of the indictment, that is, that monies obtained from the operations of such store were routinely wired or electronically transferred from the State of Texas for deposit in a bank in another state, then you are instructed that the interstate commerce element, which I have just referred to as the third element of the offense charged by Count 1 of the indictment has been satisfied.[1]

Parker filed these written objections to the court's charge:

> The finding by the court that certain facts establish the interstate commerce nexus deprives the defendant of due process, and the right to trial by jury. Counsel recognizes Fifth Circuit law allows this procedure under the theory the interstate commerce element is jurisdictional. However, counsel believes current Fifth Circuit law to be in conflict with the logic of Supreme Court precedent. In *Stirone v. United States*, 361 U.S. 212, 80 S. Ct. 270 (1960) the Supreme Court unequivocally stated:
>
> > "[T]here are two essential elements of a Hobbs Act crime: interference with commerce, and extortion [in this case, robbery]. Both elements have to be charged. Neither is surplusage and neither can be treated as surplusage. The charge that interstate

---

[1]Similar instructions were given as to each of the robberies charged.

commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference." (alteration in Parker's written objection).

In *United States v. Gaudin*, ___U.S.___, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995), decided after Parker's trial, the Supreme Court unanimously held that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *Gaudin*, 115 S. Ct. at 2314. In *Gaudin*, the district court instructed the jury that, to convict respondent, the government was required to prove, *inter alia*, that the alleged false statements were material. However, the court further instructed that "'[t]he issue of materiality . . . is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed that the statements charged in the indictment are material statements.'" *Id*. at 2313. The Supreme Court upheld the reversal of Gaudin's conviction because the jury's constitutional responsibility is not merely to determine the facts but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence. *Id.* at 2315.

The government contends that *Gaudin* differs from this case in that, in *Gaudin*, the trial court took a factual element away from the jury entirely, while in this case the jury was instructed that they -- not the judge -- had to believe beyond a reasonable doubt the evidence supporting an interstate commerce finding. That is not how we understand *Gaudin*. The language from the *Gaudin* opinion describing the jury instruction in that case clearly refers to the

4

statements in question as "alleged," leaving open for the jury's determination the factual issue of whether or not the statements had been made. *Id.* at 2313. Additionally, the argument advanced by the government in *Gaudin* belies the interpretation proposed by the government here. There, the government argued that the requirement that the jury decide all elements of a criminal offense applies only to the factual components of the essential elements and not to mixed questions of fact and law. *Id.* at 2314. The Supreme Court rejected this argument, holding that indeed even application-of-legal-standard-to-fact sorts of questions were the province of the jury. *Id.* The question taken away from the jury by the trial court in *Gaudin* is analogous to the circumstance in the present case: the trial court charged the jury with deciding if the alleged acts occurred and reserved for itself the question of whether or not the alleged acts affected interstate commerce.

The government next attempts to distinguish Parker's case from *Gaudin* on the basis that a different element was taken away from the jury by the trial court in this case. In *Gaudin*, it was materiality; in this case, it was the finding of an effect on interstate commerce. The government contends that because the interstate commerce element is necessary for jurisdiction, it is appropriately a matter for the judge's determination. In the Fifth Circuit, prior to *Gaudin,* the trial court determined whether the facts alleged met the statutory requirement of affecting interstate commerce. *United States v. Hyde*, 448 F.2d 815, 839-841 (5th Cir. 1971), *cert. denied,* 404 U.S. 1058, 92 S. Ct. 736, 30 L. Ed. 2d 745

5

(1972).[2]  This approach was used rather than telling the jury in general terms what it means to affect commerce and allowing the jury to determine whether the facts meet the criterion, based upon the premise that effect on interstate commerce is a jurisdictional element for which the court has great responsibility. *Id.; see also, United States v. Hooper*, 575 F.2d 496, 497 (5th Cir.), *cert. denied*, 439 U.S. 895, 99 S. Ct. 256, 58 L. Ed. 2d 242 (1978).

"[O]ne panel may not overrule the decision -- right or wrong -- of a prior panel, absent *en banc* reconsideration or a superseding contrary decision of the Supreme Court." *In re Dyke*, 943 F.2d 1435, 1442 (5th Cir. 1991) (citations omitted).  However, *Gaudin* makes it clear that, although the court must instruct the jury on the law, criminal defendants have a constitutionally guaranteed right to demand that the jury decide guilt or innocence on every element, which includes application of the law to the facts.  *Gaudin*, 115 S. Ct. at 2315.  In finding constitutional error, *Gaudin* provides no basis for distinguishing materiality from an effect on interstate commerce by labeling the latter jurisdictional.

Chief Justice Rehnquist, in his concurring opinion, referred to the "syllogistic neatness" of the *Gaudin* decision:  "every element of an offense charged must be proven to the satisfaction of the jury beyond a reasonable doubt; 'materiality' is an element of the offense charged under § 1001; therefore, the jury, not the

---

[2]Thus, the trial judge's instruction was entirely proper at the time it was given under existing Fifth Circuit precedent.

Court, must decide the issue of materiality." *Gaudin*, 115 S. Ct. at 2320. In applying *Gaudin* to the Hobbs Act, we must determine whether the second premise of the syllogism holds up, *i.e.*, whether affecting interstate commerce is an element of a Hobbs Act violation. The government in *Gaudin* did not contest that materiality was an element of the offense charged. Likewise the government in this case does not contest that affecting interstate commerce is an element of a Hobbs Act violation. We find that it is. Therefore, under *Gaudin*, it was error for the trial judge to decide the element of effect on interstate commerce.

However, the Supreme Court explicitly did not determine whether the constitutional error identified in *Gaudin* was subject to a harmless error analysis. *Gaudin*, 115 S. Ct. at 2321 (Rehnquist, C.J., concurring). In *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the Supreme Court rejected the view that all constitutional errors require reversal. Certain constitutional errors may be harmless in terms of their effect on the fact-finding process at trial, *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986), while others, such as total deprivation of the right to counsel or trial by a biased judge, will always invalidate the conviction. *Sullivan v. Louisiana*, ___U.S. ___, 113 S. Ct. 2078, 2080, 124 L. Ed. 2d 182 (1993). We must decide into which category this particular *Gaudin*-type error falls.

In this inquiry, different *Gaudin*-type errors will produce different results. While it is error to prevent the jury from

7

rendering a verdict on any element, the harmful-error analysis differs depending on the particular element excluded from the jury. For example, *Gaudin* involved the issue of materiality and noted the historical significance of decisions indicating that materiality was a question for the jury. *Gaudin*, 115 S. Ct. at 2316-18. In contrast, the effect on interstate commerce, although an element of the crime, is purely jurisdictional in nature, with no historical role whatsoever for the jury in determining the issue. *See United States v. Hyde*, 448 F.2d 815, 839 n.34 (5th Cir. 1971), *cert. denied*, 404 U.S. 1058 (1972).

There is a "strong presumption" that constitutional violations will be subject to harmless-error analysis. *See Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 3106-07, 92 L. Ed. 2d 460 (1986). Indeed, "most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 1263, 113 L. Ed. 2d 302 (1991). "Consistent with the jury-trial guarantee, the question [*Chapman*] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Sullivan,* 113 S. Ct. at 2081.

In the present case, the error had no effect on the guilty verdict, in that the error did not change the outcome of the case. The jury found that the underlying predicate acts to the interstate commerce element did occur. The trial judge ruled that these acts, as a matter of law, sufficed to show an effect on interstate commerce. The trial judge's ruling was a correct statement of the

8

law.   The trial judge's only error, under *Gaudin*, was in not allowing the jury to make that finding.

However, because the trial judge's ruling was a correct statement of the law and the jury found that the underlying predicate acts did occur, the error did nothing to change the outcome of the case because under a correct application of the law, the verdict would have been guilty regardless.   In this respect, the present case is similar to *Victor v. Nebraska*, 114 S. Ct. 1239 (1994), where the Supreme Court held that the proper standard of reviewing allegedly erroneous jury instructions is whether there is a reasonable likelihood that the jury applied the instructions in a way that violates the Constitution.   In the present case, because the jury found that the underlying predicate acts did occur, there is no reasonable likelihood that the jury would have applied a proper instruction erroneously.   We therefore find the error to be harmless. *See also, Yates v. Evatt,* 500 U.S. 391, 402, 111 S. Ct. 1884, 1892, 114 L. Ed. 2d 432 (1991) (taint of an unconstitutional burden-shifting jury instruction subject to harmless-error analysis); *Carella v. California*, 491 U.S. 263, 266, 109 S. Ct. 2419, 2421, 105 L. Ed. 2d 218 (1989) (jury instruction containing an erroneous mandatory presumption subject to harmless-error analysis) (per curiam); *Pope v. Illinois*, 481 U.S. 497, 502-04, 107 S. Ct. 1918, 1921-23, 95 L. Ed. 2d 439 (1987) (jury instruction misstating an element of an offense subject to harmless-error analysis); *Rose*, 478 U.S. at 580, 106 S. Ct. at 3107 (1986) (jury instruction containing an erroneous rebuttable presumption subject

to harmless-error analysis).  *But see, Sullivan*, 113 S. Ct at 2082 (erroneous burden of proof instruction not subject to harmless-error analysis).  We do not address whether this same error might be considered harmful in future cases.

## DENIAL OF MOTION TO REOPEN

During opening statements, Parker's attorney told the jury that Parker did not contest that he committed the robberies. Rather, his theory of the case was that the "firearm" used in the robberies was a toy pistol, which his father would testify was found in Parker's trousers after his arrest.  Counsel stated that the sole eyewitness to the robbery in Count 3, David Fleming, would admit that the weapon he observed "could have been a toy gun."

Fleming was called as a government witness and on cross examination denied admitting during an interview with Maria Nava, a defense investigator, that the gun used in the robbery could have been a toy gun.  The defense called Nava later in the trial but did not question her about Fleming's statement regarding the gun. Three of the robberies were videotaped, and no gun was visible in the video tapes.

On March 8, 1994, both parties rested just before noon, and the jury was dismissed for a lunch break until 1:00.  During the lunch break, Parker moved to reopen his case so that he could recall Nava and "ask her one question that is crucial to my case." Specifically, Parker wanted to ask Nava whether Fleming had admitted to her that the gun involved in his robbery could have

10

been a toy gun.  The government opposed the motion, and the court

denied it orally on the record, stating:

> the government would be entitled to rebuttal, and I'm not
> sure I want to get in to all of that. . . .   I don't
> think we're at a point in the trial that that would be
> appropriate, so I'm going to deny that request.

The government emphasized the omission of this testimony by arguing

during closing, "You heard Mr. Fleming.  Nobody tested his

credibility."

We review the denial of a motion to reopen a criminal case for

abuse of discretion.  *United States v. Walker*, 772 F.2d 1172 (5th

Cir. 1985).  In exercising its discretion on a motion to reopen a

criminal case after the close of evidence, the district court

> must consider the timeliness of the motion, the character
> of the testimony, and the effect of the granting of the
> motion.  The party moving to reopen should provide a
> reasonable explanation for failure to present the
> evidence in its case-in-chief.  The evidence proffered
> should be relevant, admissible, technically adequate, and
> helpful to the jury. . . .  [S]uch testimony should not
> "imbue the evidence with distorted importance, prejudice
> the opposing party's case, or preclude an adversary from
> having an adequate opportunity to meet the additional
> evidence offered."

*Id.* at 1177, quoting *United States v. Thetford*, 676 F.2d 170, 182

(5th Cir. 1982), *cert. denied*, 459 U.S. 1148, 103 S. Ct. 790, 74 L.

Ed. 2d 996 (1983).  In *Walker*, this court reversed the conviction,

finding that the district court abused its discretion in denying

Walker's motion.  The government rested before the end of the day

on a Friday, and Walker moved to reopen the case so that he could

testify at the commencement of court on Monday.  Therefore, the

first factor, timeliness, weighed against Walker, but the delay was

termed "minor."  *Id*. at 1177.   Second, the character of the

testimony was testimony of the defendant who had not previously taken the stand, which this court considered of "such inherent significance" that it weighed "heavily" in favor of the defendant. *Id.* at 1178-1179. Third, this court found that the effect of granting the motion weighed slightly in favor of Walker because there was no showing of prejudice to the government and no disruption to the orderly flow of testimony or to the district court's docket. Also, any undue emphasis derived from the timing could have been remedied by a cautionary instruction. *Id.* at 1179-1183. Finally, Walker's excuse for delay, that he was emotionally upset and unprepared to testify on Friday, was found "not significantly unreasonable." *Id*. at 1184.

The record does not reveal the weight assigned by the district court to these enumerated factors in Parker's case. We must nevertheless apply the factors to Parker. The timeliness of his motion -- a delay of one hour, during which the court took its normal lunch break -- weighs in favor of Parker.

Second, the nature of the testimony was an attack on the credibility of the only eyewitness to the disputed use of a firearm. Parker argues that it is crucial and goes to the heart of the only disputed fact in the case. This was magnified by Parker's opening argument, when counsel told the jury that Fleming would admit the gun might have been a toy, and by the government's statement in closing that, "Nobody tested [Fleming's] credibility." The government responds that the "toy gun theory" was adequately developed through Parker's father's testimony, the defense had the

12

opportunity to cross examine Fleming to attack his credibility, and Nava was not an active participant in the robbery, thereby minimizing the importance of her testimony. Because the testimony went to the one disputed fact in the trial and was the only source of testimony available to Parker to question the eyewitness account, the second factor weighs in favor of Parker.

Third, there is no contention that reopening testimony would have disrupted the court's docket. The government contends that reopening testimony would have confused the jury, prejudiced the government, and placed undue significance on Nava's additional testimony. Parker disputes that allowing the testimony right after lunch would have had any adverse impact on the jury's perception of the evidence. Neither party addresses the possible effect of a cautionary instruction in this case. It is clear to us that, with proper cautionary instruction, the jury could have adequately weighed the additional testimony. The third factor therefore favors Parker.

Finally, the excuse given, that defense counsel simply made a mistake, seems reasonable and does not appear to be a subterfuge for seeking delay or unfair advantage.

Not only do all of the *Walker* factors favor Parker, this second conviction under 18 U.S.C. § 924(c) results in a mandatory twenty (20) year sentence which runs consecutively with the five (5) year sentence imposed as a result of the first § 924(c) conviction. Based on the foregoing, we hold that the district court abused its discretion in denying Parker's motion to reopen

13

his case as to the § 924(c) convictions.[3]  This error had no impact on the Hobbs Act convictions, and they therefore remain intact.

THE INTERSTATE COMMERCE ELEMENT IN THE INDICTMENT

The indictment alleged that Parker did "obstruct, delay and affect commerce by robbery" in violation of 18 U.S.C. § 1951 (the Hobbs Act).  That statute criminalizes the act of "affect[ing] commerce by robbery" and defines commerce in a separate section as interstate commerce.  18 U.S.C. § 1951(b)(3).  However, there is nothing in the indictment itself either alleging an impact on interstate commerce specifically or alleging facts which amount to an effect on interstate commerce.

An indictment must allege every element of a charged offense in order to insure that the defendant has been accorded the protection guaranteed by the Fifth Amendment of a grand jury's finding that there is probable cause to believe that the defendant committed the charged crime.  *See United States v. Deisch*, 20 F.3d 139 (5th Cir. 1994).  As stated earlier, an effect on interstate commerce is an essential element of a Hobbs Act violation.

The district court and the government rely on *United States v. Williams*, 679 F.2d 504 (5th Cir. 1982), *cert. denied*, 459 U.S. 1111, 103 S. Ct. 742, 74 L. Ed. 2d 963 (1983), which held that an indictment that alleged effects on interstate commerce in conclusory terms (without factual specificity) was not fatally

_____

[3]Although the erroneously omitted testimony pertained to only the Fleming robbery, it could have affected the jury's decision as to the other § 924 robbery as well.  Thus, the trial court's error tainted both § 924 convictions, and both must be reversed.

14

insufficient.  That reliance is misplaced.  Unlike the present case, the indictment in *Williams* did allege effect on <u>interstate</u> commerce, *id.* at 508, so the issue before this panel was not at issue in *Williams.*  However, in *United States v. Gipson*, 46 F.3d 472, 474 (5th Cir. 1995), this court held that an indictment that charged a Hobbs Act violation in language virtually identical to that used in this case was adequate.  We therefore find no merit in Parker's contention.

DOUBLE JEOPARDY

In two of the robberies, Parker was charged and convicted of violation of both 18 U.S.C. § 1951 and 18 U.S.C. § 924(c).  Parker contends that under the test set out in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 535 (1932) (each conviction must require proof of a fact or element that the other does not), these two convictions violate the double jeopardy prohibition.

This Circuit has acknowledged that the "same elements" test still controls.  *United States v. Martinez*, 28 F.3d 444, 446 (5th Cir.), *cert. denied,* 115 S. Ct. 281, 130 L. Ed. 2d 197 (1994). *Martinez* case held that §§ 1951 and 924(c)(1) passed the *Blockburger* test because § 1951 requires proof of threats or force but not possession of a weapon, while § 924 requires proof that the defendant used or carried a weapon but not that the weapon was used for threat or force.[4]  Additionally, subsequent to *Martinez* this

---

[4]"Whoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in

15

court again addressed the issue in *United States v. Gonzales*, 40 F.3d 735 (5th Cir. 1994), *cert. denied,* 115 S. Ct. 1716, 131 L. Ed. 2d 575 (1995), holding that cumulative sentences imposed pursuant to § 924 are permissible because the legislature intended to authorize such punishments.

We therefore hold that Fifth Circuit precedent forecloses Parker's position.

CONCLUSION

We AFFIRM Parker's Hobbs Act convictions, REVERSE his § 924(c) convictions, VACATE his sentence, and REMAND this cause to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, VACATED and REMANDED.

---

addition to the punishment provided for such crime . . . be sentenced to imprisonment for five years . . . ." 18 U.S.C. § 924(c)(1). It could be argued that in order to convict under § 924, the government has to prove <u>every</u> element of the crime of violence relied on, and therefore under the *Blockburger* test there is no element of § 1951 which is not a necessary element of § 924. However, that argument has been foreclosed by *Martinez*.

16